18-3598-cr(L)
United States v. Tanner et al.

**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

August Term, 2018

(Argued: June 24, 2019          Decided: October 31, 2019)

Docket Nos. 18-3598-cr(L), 18-3601-cr(CON), 19-294-cr(CON), 19-356-cr(CON)

_____

UNITED STATES OF AMERICA,

*Appellee,*

v.

GARY TANNER, ANDREW DAVENPORT,

*Defendants-Appellants.*

_____

Before:

JACOBS, LOHIER, and PARK, *Circuit Judges.*

Defendants Andrew Davenport and Gary Tanner were convicted after a jury trial in the United States District Court for the Southern District of New York (Preska, J.) of honest services fraud and honest services fraud conspiracy, conspiracy to violate the Travel Act, and conspiracy to commit money laundering. In addition to challenging their convictions, the defendants challenge the restitution and forfeiture orders entered against them. We affirm the defendants' convictions, but we conclude that the District Court (1) failed to employ a sound methodology to determine the victim's actual loss for restitution, and (2) erred in ordering forfeiture of an amount that exceeded the

amount of the criminal proceeds.  We also hold that, under the circumstances of this case, <u>Honeycutt v. United States</u>, 137 S. Ct. 1626 (2017), does not foreclose ordering the defendants jointly and severally to forfeit the proceeds each possessed as a result of their crimes.  Accordingly, the convictions are **AFFIRMED**, the restitution order of the District Court is **VACATED** in part and **REMANDED** with instructions to employ a sound methodology in determining actual victim loss, and the forfeiture orders are **VACATED** in part and **REMANDED** with instructions to amend the judgments so that the defendants are required jointly and severally to forfeit a total of no more than $9,703,995.33.

RICHARD COOPER, Assistant United States Attorney (Amanda Kramer, Won S. Shin, Assistant United States Attorneys, *on the brief*), *for* Geoffrey S. Berman, United States Attorney for the Southern District of New York, New York, NY, *for Appellee* United States of America.

DANIEL S. VOLCHOK, Wilmer Cutler Pickering Hale and Dorr LLP, Washington, DC (Howard M. Shapiro, David M. Lehn, Wilmer Cutler Pickering Hale and Dorr LLP, Washington, DC, Brendan R. McGuire, Matthew Galeotti, Claire M. Guehenno, Marguerite Colson, Wilmer Cutler Pickering Hale and Dorr LLP, New York, NY, *on the brief*), *for Defendant-Appellant* Gary Tanner.

ALEXANDRA A.E. SHAPIRO (Daniel J. O'Neill, *on the brief*), Shapiro Arato Bach LLP, New York, NY, *for Defendant-Appellant* Andrew Davenport.

LOHIER, *Circuit Judge*:

Defendants Andrew Davenport and Gary Tanner were convicted after a jury trial in the United States District Court for the Southern District of New York (Preska, <u>J.</u>) of honest services fraud and honest services fraud conspiracy, 18 U.S.C. §§ 1343, 1346, 1349, conspiracy to violate the Travel Act, 18 U.S.C. §§ 371,

2

1952(a)(1), (3), and conspiracy to commit money laundering, 18 U.S.C. § 1956(h).

On appeal, the defendants attack the sufficiency of the evidence at trial relating to their convictions for the honest services fraud counts and for conspiring to violate the Travel Act.  They also challenge the jury instructions regarding Davenport's intent, various evidentiary rulings made at trial, and the restitution and forfeiture orders entered by the District Court.  We conclude that sufficient evidence supported the defendants' convictions, that the jury charge was not erroneous, and that any errors in the District Court's evidentiary rulings were harmless.  We therefore affirm the judgments of conviction.  With respect to the restitution order, we hold that the District Court failed to use a sound methodology to determine the victim's actual loss.  We also conclude that, under the circumstances of this case, the defendants may be held jointly and severally liable to forfeit the criminal proceeds that each possessed as a result of their crimes, see Honeycutt v. United States, 137 S. Ct. 1626 (2017), but that the District Court erred in ordering the defendants to forfeit more than the amount of their criminal proceeds.

## BACKGROUND

Because this is an appeal from judgments of conviction entered after a jury trial and Tanner and Davenport challenge the sufficiency of the evidence against them, the following facts are drawn from the trial evidence and described "in the light most favorable to the Government." United States v. Caltabiano, 871 F.3d 210, 213 (2d Cir. 2017).

In 2013 Tanner's employer, Valeant Pharmaceuticals International, a pharmaceutical manufacturer, partnered with Philidor RX Services, a specialty pharmacy founded and run by Davenport, to sell Valeant's pharmaceutical products. As insurance companies demanded prior authorization for branded drugs like Valeant's, specialty pharmacies like Philidor helped customers navigate interactions with insurance companies to access branded drugs. To help Philidor grow into a strong distribution channel for Valeant's products, Valeant placed four of its employees onsite at Philidor and made Tanner primarily responsible for managing Valeant's relationship with Philidor.

As Tanner became integrated into Philidor's business over time, he began to use his position at Valeant to assist Philidor in ways that could be considered contrary to Valeant's interests. When Valeant directed him to contact and

4

develop ties with other pharmacies in order to diversify Valeant's specialty pharmacy network, for example, Tanner told Valeant that he would comply but made at best half-hearted attempts to do so, ultimately using the new contacts to help Philidor, not Valeant. Using an alias, Tanner secretly provided Davenport with information about competitor pharmacies, which Tanner obtained through his ostensible efforts to diversify Valeant's network. In one example, Davenport received information from Tanner about a competitor and asked whether the competition was "[p]roblematic"; Tanner responded: "No—just market intelligence for us." Supp. App'x 2. And when, as Tanner but not Valeant knew, Philidor appeared ready to accept a 3.5 percent discount on Valeant pharmaceutical products, Tanner gave Philidor a 4 percent discount instead, to Valeant's economic detriment.

The close relationship between Tanner and Philidor also benefited Tanner. In the period when Tanner was feeding Davenport information about Philidor's competitors, for example, Davenport paid about $750 for a one-night luxury hotel stay in New York for Tanner and his wife.

In 2014 Valeant began negotiations for the immediate acquisition of Philidor. Tanner was assigned to Valeant's due diligence team and tasked with

helping Valeant better understand Philidor's business. Throughout Valeant's negotiations with Philidor, however, Tanner secretly worked on Philidor's behalf, helping it devise a negotiating strategy and forwarding at least one confidential document revealing Valeant's position to Davenport. The Valeant team was unaware that Tanner was providing this advice to Davenport.

The negotiations ended in December 2014, when Valeant purchased an option to acquire Philidor under a Purchase Option Agreement ("POA"). From start to end of negotiations, the price tag of the POA deal increased by $8 million. Valeant paid Philidor $133 million in upfront payments between December 2014 and January 2015, promising an additional $100 million in potential future payments to Philidor's owners depending on Philidor's future sales. Drawing on these upfront payments, Davenport transferred over $9.7 million to Tanner in four separate transactions channeled through a series of shell companies owned or controlled by Davenport and Tanner that were established to disguise the payments.

In January 2017 Tanner and Davenport were charged with (1) honest services wire fraud conspiracy (Count One); (2) honest services wire fraud (Count Two); (3) Travel Act conspiracy predicated on a violation of New York's

commercial bribery laws (Count Three); and (4) money laundering conspiracy (Count Four). The honest services fraud charges were premised on the theory that Davenport agreed to pay Tanner a portion of the proceeds from the sale of Philidor to Valeant in exchange for Tanner serving Philidor's and Davenport's interests.

A jury convicted both defendants on all counts. The District Court sentenced each to a term of imprisonment of 366 days, to be followed by two years of supervised release. The District Court also ordered Tanner and Davenport to jointly and severally pay $11,855,683.35 in restitution and to each forfeit $9,703,995.33 in criminal proceeds.

This appeal followed.

**DISCUSSION**

On appeal, both defendants contend principally that there was insufficient evidence for a reasonable jury to convict them of honest services wire fraud or of violating the Travel Act; that the District Court gave the jury an erroneous instruction on the mens rea element for honest services wire fraud; and that the District Court erred in excluding certain emails and testimony and precluding cross-examination, all of which might have cast doubt on the Government's main

7

theory at trial. In addition, both defendants challenge the restitution and forfeiture orders. For the reasons that follow, we find no basis for reversing their convictions. But we vacate the portion of the defendants' sentences that required them, jointly and severally, to pay $8 million in restitution and that also required each to pay $9,703,995.33 in forfeiture, for an approximate total forfeited amount of $19.4 million.

### 1. Sufficiency of the Evidence

Davenport and Tanner maintain that there was insufficient evidence to convict them of honest services wire fraud or of violating the Travel Act. Although challenges to the sufficiency of the evidence supporting conviction are reviewed de novo, the challenger "bears a heavy burden" because our review "is exceedingly deferential." United States v. Coplan, 703 F.3d 46, 62 (2d Cir. 2012) (quotation marks omitted). A judgment of conviction will be upheld "if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. (quotation marks omitted); see also United States v. Payton, 159 F.3d 49, 56 (2d Cir. 1998) ("The ultimate question is not whether we believe the evidence adduced at trial established [the] defendant's guilt beyond a

reasonable doubt, but whether any rational trier of fact could so find.").  With that in mind, we consider the defendants' sufficiency challenges.

### A. Honest Services Fraud Convictions

The honest services fraud statute, 18 U.S.C. § 1346, requires the Government to prove a "fraudulent scheme[] to deprive another of honest services through bribes or kickbacks supplied by a third party who had not been deceived."  Skilling v. United States, 561 U.S. 358, 404 (2010).  "[T]o violate the right to honest services, the charged conduct must involve a quid pro quo, i.e., an intent to give or receive something of value in exchange for an . . . act."  United States v. Nouri, 711 F.3d 129, 139 (2d Cir. 2013) (quotation marks omitted).

Here, Tanner conveyed information about competitor specialty pharmacies that he had acquired in his capacity as a Valeant employee, secured for Philidor an incremental discount on Valeant products that was not in Valeant's interest, and secretly advised Davenport about how to negotiate certain terms of the POA with Valeant.  Meanwhile, Davenport secretly paid Tanner about $9.7 million from the proceeds of the sale under the POA and about $750 for a luxury hotel stay in New York City.  In our view, the size and timing of Davenport's payments to Tanner as well as his use of shell companies to conceal

9

the $9.7 million payment provided compelling evidence that Davenport made the payments in exchange for Tanner's help. See United States v. Rosen, 716 F.3d 691, 703 (2d Cir. 2013); United States v. Bahel, 662 F.3d 610, 639–40 (2d Cir. 2011).

Tanner and Davenport insist that their case falls outside "the paradigmatic cases of bribes and kickbacks" described in Skilling because at least part of Tanner's job for Valeant involved helping Philidor. 561 U.S. at 411. Helping Philidor, they suggest, ultimately helped Valeant. We are not persuaded. First, the Government was not required to prove that acts that Tanner performed or promised to perform for Davenport were contrary to Valeant's interests, or that they caused or were intended to cause it financial harm; it needed to prove only that Valeant lost its right to Tanner's honest services at least in part because of Davenport's bribes and kickback. See Skilling, 561 U.S. at 400. Second, in any event, there was ample evidence that Tanner's conduct was designed to harm Valeant. As we have recounted above, Tanner materially undercut Valeant's ability to diversify its network through specialty pharmacies that competed with Philidor; he secured for Philidor a discount on Valeant products that was not in Valeant's interest; and he advised Davenport on negotiating the terms of the

POA.  Although not required under Skilling, that evidence was certainly sufficient to support the honest services fraud convictions here.

Nor are we convinced that Tanner was merely engaged in undisclosed self-dealing because he allegedly held an ownership interest in Philidor. Although the Government introduced some evidence at trial suggesting that Tanner may have held an ownership interest in Philidor, the Government also characterized the "so-called ownership interest" as a "bribe" or a stand-in for Davenport's agreement to give Tanner a cut of the profits of the eventual sale of Philidor.  The jury, therefore, could reasonably have rejected the theory that Tanner held an ownership interest in Philidor, or concluded that the ownership interest constituted a bribe.

### B.  Travel Act Convictions

Tanner and Davenport fare no better in challenging their convictions under the Travel Act, which, as relevant here, prohibits traveling interstate or using mail or any other "facility" for the purpose of distributing the proceeds of or promoting any "unlawful activity."  18 U.S.C. § 1952(a)(1), (3).  "[U]nlawful activity" includes "bribery . . . in violation of the laws of the State in which committed."  Id. § 1952(b).  The defendants contend that there was no evidence

that they conspired to commit bribery in New York, which the parties agree is the relevant State. We disagree. Even assuming, without deciding, that a charge of conspiracy to violate the Travel Act requires proof that the defendants conspired to commit bribery specifically in New York, the evidence that Davenport paid for Tanner's luxury hotel stay in New York in exchange for information about Philidor's competitors, though thin, was enough for the jury to determine that the conspiracy to commit bribery occurred at least in part in New York.

2. <u>Jury Instructions</u>

The defendants next contend that even if the evidence against them was sufficient, they should have a new trial on the honest services counts because, in describing the elements of those counts, the District Court failed to instruct the jury that it must find that both Tanner <u>and</u> Davenport acted with corrupt intent. Read in context, however, the challenged portions of the jury charge, which we review <u>de novo</u>, <u>see</u> <u>United States v. Roy</u>, 783 F.3d 418, 420 (2d Cir. 2015), did not suggest that the jury could convict based on Tanner's corrupt intent alone. When it introduced the intent requirement, the District Court specifically referred to both defendants, telling the jury that the Government must prove "that Gary

12

Tanner and Andrew Davenport knowingly and willfully participated in the scheme or artifice, with knowledge of its fraudulent nature and with specific intent to defraud." App'x 492–93. Moments later, the District Court repeated that an element of honest services wire fraud was that "a defendant participated in the scheme knowingly, willfully, and with specific intent to defraud," which it further defined as "specific intent to deceive for the purpose of depriving Valeant of its right to Tanner's honest services." App'x 494. Although the instruction at this point might have again referred to each defendant by name, we conclude that it fairly informed the jury of its obligation to find Davenport's corrupt intent as well as Tanner's in order to convict.

### 3. Evidentiary Rulings

The defendants' final challenge to their convictions arises from various evidentiary rulings. They believe these rulings impaired their ability to cast doubt on the Government's principal argument at trial that Tanner secretly intended to further Philidor's interest at Valeant's expense. First, the defendants contend that the District Court erred in excluding, as hearsay, two emails that they sought to introduce into evidence under the "state of mind" exception to the hearsay rule. Second, they assert that the District Court erred in excluding the

13

testimony of one witness, refusing to compel the immunization of another, and restricting their cross-examination of a third. Although we review the District Court's rulings for abuse of discretion, we need not assess error if we deem the error harmless. See United States v. Siddiqui, 699 F.3d 690, 703–04 (2d Cir. 2012). After reviewing the extensive trial record, we agree with the Government that any evidentiary errors by the District Court were harmless in light of the overwhelming evidence of the defendants' guilt on all counts.

4. Sentencing

Finally, the defendants challenge the restitution and forfeiture orders entered against them. These challenges are not without merit.

A. Restitution

The District Court determined, pursuant to 18 U.S.C. § 3663A, that Davenport and Tanner were jointly and severally liable for the $8 million that Valeant allegedly overpaid for the option to purchase Philidor. We review the District Court's order of restitution for abuse of discretion, "reversing its ruling only if it rests on an error of law, a clearly erroneous finding of fact, or otherwise cannot be located within the range of permissible decisions." United States v. Thompson, 792 F.3d 273, 277 (2d Cir. 2015) (quotation marks omitted). Because

14

the purpose of restitution is compensatory and 18 U.S.C. § 3664(f)(1)(A) provides that a restitution order is limited to "the full amount of each victim's losses," the "restitution order must be tied to the victim's actual, provable, loss," United States v. Zangari, 677 F.3d 86, 91 (2d Cir. 2012), and the amount of restitution ordered must reflect a "reasonable approximation of losses supported by a sound methodology," United States v. Gushlak, 728 F.3d 184, 196 (2d Cir. 2013).

We conclude that the District Court abused its discretion in ordering the $8 million in restitution. That amount—which represents nothing more than the difference between Valeant's initial offer and the final purchase price of the option to buy Philidor—does not attempt to approximate any increase in cost that is attributable to the defendants' criminal conduct. It is therefore not a "reasonable approximation of losses supported by a sound methodology." Id.

Urging affirmance, the Government proposes that the $9.7 million kickback constituted Valeant's actual loss. As we explained in United States v. Finazzo, 850 F.3d 94 (2d Cir. 2017), however, while a direct correlation between a defendant's gain and a victim's loss may exist "'such that the defendant's gain can act as a measure of—as opposed to a substitute for—the victim's loss[,]'" id. at 117 (quoting Zangari, 677 F.3d at 93), loss to the victim "is not a necessary

consequence" of all kickback schemes, id. at 118.  For that reason, it would not be "a sufficiently sound methodology for the district court to merely assume that . . . kickbacks [a]re solely justified by inflated prices."  Id. at 117–18 (quoting Zangari, 677 F.3d at 93).  Here the loss to Valeant was not a necessary consequence of the kickback Tanner received.  We therefore also reject the Government's argument that $9.7 million reflects Valeant's actual loss.

We vacate the portion of the restitution order requiring the defendants to jointly and severally pay $8 million to Valeant and remand to allow the District Court to determine Valeant's actual loss if that can be done using a sound methodology.

### B.  Forfeiture

Davenport and Tanner were ordered to forfeit $9,703,995.33 each rather than jointly and severally, for an approximate total of $19.4 million.  As the Government concedes on appeal, the total proceeds of the defendants' kickback scheme amounted to no more than $9,703,995.33.  It was therefore error for the District Court to order the defendants to forfeit double that amount.  We vacate

and remand with instructions to amend the judgments so that the defendants together are required to forfeit a total of no more than $9,703,995.33.

Davenport separately argues that his forfeiture order should be vacated in its entirety because the Supreme Court in Honeycutt v. United States, 137 S. Ct. 1626 (2017), prohibited joint and several forfeiture for co-conspirators. While we have not yet fully defined the parameters of Honeycutt, this much is true: Honeycutt's bar against joint and several forfeiture for co-conspirators applies only to co-conspirators who never possessed the tainted proceeds of their crimes. See id. at 1630 ("[A] defendant may [not] be held jointly and severally liable for property that his co-conspirator derived from the crime but that the defendant himself did not acquire." (emphasis added)); id. at 1631–33. But when each co-conspirator acquired the full proceeds "as a result of the crime," id. at 1635, each can still be held liable to forfeit the value of those tainted proceeds, even if those proceeds are no longer in his possession because they have been "dissipated or otherwise disposed of by 'any act or omission of the defendant.'" Id. at 1634 (quoting 21 U.S.C. § 853(p)(1)). Davenport's argument to the contrary ignores that criminal forfeiture "merg[es]" an in personam element with the traditional in rem nature of forfeiture, making it "easier for the Government to

17

hold the defendant who acquired the tainted property responsible," id. at 1635, by allowing the Government to seek "substitute property" under § 853(p) when the defendant no longer possesses the criminal proceeds. See 21 U.S.C. § 853(p).

There are two more things to note when criminal proceeds result from money laundering offenses under 18 U.S.C. § 1956 in particular. First, a court, "in imposing sentence on a person convicted of an offense in violation of section 1956, . . . shall order that the person forfeit to the United States any property, real or personal, involved in such offense." 18 U.S.C. § 982(a)(1) (emphasis added). Second, a defendant who "acted merely as an intermediary" but no longer possesses the property acquired as a result of money laundering may be required to forfeit substitute property, but only if the defendant "conducted three or more separate transactions involving a total of $100,000 or more in any twelve month period." 18 U.S.C. § 982(b)(2); see also id. § 853(p).

Here, Davenport was an active participant in the unlawful activity that his money laundering was designed to conceal, rather than a mere intermediary in the money laundering scheme. But even if Davenport fell into the "mere intermediary" category of § 982(b)(2), that provision's safe harbor would not extend to him because at trial, the evidence showed that Davenport wired a total

18

of $9.7 million in four separate transactions from December 2014 to January 2015, while the safe harbor is triggered only if the defendant engages in fewer than three such transactions.  See 18 U.S.C. § 982(b)(2).  Although Davenport no longer possesses the money he laundered, the Government may seek "substitute property" and hold him liable together with Tanner to forfeit the laundered money he transferred to Tanner.  See 21 U.S.C. § 853(p).

For these reasons and under these circumstances, insofar as the District Court's forfeiture orders require the defendants to each pay $9,703,995.33, we vacate and remand to the District Court with instructions to order the defendants jointly and severally to forfeit a total of no more than $9,703,995.33.

## CONCLUSION

We have considered the parties' remaining arguments and conclude that they are without merit.  For the foregoing reasons, the convictions of both Davenport and Tanner are **AFFIRMED**, the restitution order of the District Court is **VACATED** in part and **REMANDED** with instructions to employ a sound methodology in determining Valeant's actual loss, and the forfeiture orders of the District Court are **VACATED** in part and **REMANDED** with instructions to

19

amend the judgments so that the defendants are required jointly and severally to forfeit a total of no more than $9,703,995.33.