# United States Court of Appeals
# For the Second Circuit

---

August Term 2019

Argued: August 26, 2019
Decided: June 3, 2020
Amended: August 14, 2020

No. 18-3485

---

IN RE: GRAND JURY PROCEEDING

FREDERICK MARTIN OBERLANDER,

*Respondent-Appellant*,

RICHARD E. LERNER,

*Respondent*,

*v.*

UNITED STATES OF AMERICA,

*Movant-Appellee.*

---

Appeal from the United States District Court
for the Eastern District of New York
No. 17-mc-2242, LaShann DeArcy Hall, *Judge*.

Before:        WINTER, POOLER, AND SULLIVAN, *Circuit Judges*.

Respondent-Appellant Frederick Oberlander challenges orders issued by the district court (LaShann DeArcy Hall, *J.*) denying his motion to quash various grand jury subpoenas and directing him to comply with the subpoenas on pain of coercive monetary sanctions. Oberlander argues that the district court lacked jurisdiction to enforce those subpoenas because they were either issued by the government without a sitting grand jury or were enforced only after the issuing grand jury had expired. In addition, Oberlander argues that the subpoenas were overbroad, issued for an improper purpose, and infringed upon his First and Fifth Amendment rights. We hold that (1) the district court lacked jurisdiction to enforce a subpoena issued without a sitting grand jury; (2) the district court retained jurisdiction to oversee a subpoena involving the same subject matter that was subsequently issued by a newly impaneled grand jury; and (3) the district court ceased to have jurisdiction to enforce the validly issued subpoena after the issuing grand jury's term expired. Nevertheless, because yet another grand jury has been impaneled and has issued an identical subpoena, we have jurisdiction to reach the merits of Oberlander's motion to quash the subpoena and find that the subpoena was neither overbroad nor issued with an improper purpose, and that it did not infringe upon Oberlander's First or Fifth Amendment rights.

VACATED IN PART; AFFIRMED IN PART AND REMANDED.

> FREDERICK M. OBERLANDER, ESQ., pro se, Montauk, New York.
>
> RICHARD D. BELLISS (Stephen C. Green, *on the brief*) Assistant United States Attorneys, *for* Grant C. Jaquith, United States Attorney for the Northern District of New York, Albany, New York, *for Movant-Appellee* United States of America.

RICHARD J. SULLIVAN, *Circuit Judge*:

Respondent-Appellant Frederick Oberlander challenges orders issued by the district court (LaShann DeArcy Hall, *Judge*) denying his motion to quash various grand jury subpoenas and directing him to comply with the subpoenas on pain of coercive monetary sanctions. Oberlander argues that the district court lacked jurisdiction to enforce those subpoenas because they were either issued by the government without a sitting grand jury or were enforced only after the issuing grand jury had expired. In addition, Oberlander argues that the subpoenas were overbroad, issued for an improper purpose, and infringed upon his First and Fifth Amendment rights.

We **VACATE IN PART**, **AFFIRM IN PART,** and **REMAND**, holding that (1) the district court lacked jurisdiction to enforce a subpoena issued without a sitting grand jury; (2) the district court retained jurisdiction to oversee a subpoena involving the same subject matter that was subsequently issued by a newly impaneled grand jury; and (3) the district court ceased to have jurisdiction to enforce the validly issued subpoena after the issuing grand jury's term expired. Nevertheless, because yet another grand jury has been impaneled and has issued an identical subpoena, we have jurisdiction to reach the merits of Oberlander's

3

motion to quash and find that the subpoena was neither overbroad nor issued with an improper purpose, and that it did not infringe upon Oberlander's First or Fifth Amendment rights.

## I. Background

**A.    Prior Proceedings**

In 1998, Felix Sater pleaded guilty to participating in a "pump and dump" securities fraud scheme as a part of a racketeering enterprise involving the La Cosa Nostra organized crime families. *Estate of Gottdiener v. Sater*, 35 F. Supp. 3d 386, 391 (S.D.N.Y. 2014); *see also* Information at 10, *United States v. Sater*, No. 98-cr-1101 (ILG) (E.D.N.Y. Dec. 10, 1998), ECF No. 6. Over the next decade, he secretly cooperated with the government in an undercover capacity, providing "valuable foreign intelligence as well as information concerning some of the most elusive and dangerous criminals of interest to U.S. law enforcement." *United States v. Sater*, No. 98-cr-1101 (ILG), 2019 WL 3288389, at *1 (E.D.N.Y. July 22, 2019). Although Sater's criminal proceedings were finally terminated when he was sentenced in 2009, the fact of his cooperation remained sealed until it was inadvertently disclosed by the Office of the Clerk of Court in August 2012. *See In re Applications to Unseal 98 CR 1101(ILG)*, 568 F. App'x 68, 69 (2d Cir. 2014); *see also*

4

*Sater*, 2019 WL 3288389, at \*1 (discussing Sater's cooperation as a matter of public record).

Between 2010 and 2013, on the heels of Sater's sentencing, Oberlander filed a series of lawsuits seeking compensation on behalf of clients who alleged that Sater had defrauded them. *See* Notice of Removal, *Kriss v. BayRock Grp. LLC*, No. 13-cv-3905 (LGS) (S.D.N.Y. June 7, 2013), ECF No. 1; Complaint, *Estate of Gottdiener v. Sater*, No. 13-cv-01824 (LGS) (S.D.N.Y. March 18, 2013), ECF No. 1; Complaint, *Kriss v. BayRock Grp. LLC*, No. 10-cv-3959 (LGS) (S.D.N.Y. May 10, 2010), ECF No. 1. As part of those lawsuits, Oberlander sought to publicly disclose information about Sater's cooperation with the government, even going so far as to attach sealed materials to the complaints as exhibits. *See Roe v. United States*, 428 F. App'x 60, 63–64 (2d Cir. 2011). Ultimately, this Court enjoined Oberlander from publicly disclosing any sealed information and directed the Chief Judge of the Eastern District of New York to appoint a special master to oversee compliance with the relevant sealing orders. *Roe v. United States*, 414 F. App'x 327, 329 (2d Cir. 2011); *see also In re Applications to Unseal 98 CR 1101(ILG)*, 568 F. App'x at 70 (affirming sealing orders); *Roe*, 428 F. App'x at 68 (affirming injunction).

In August 2012, Sater commenced a civil contempt proceeding against Oberlander, alleging that Oberlander had intentionally violated this Court's disclosure injunction. *See* Motion, *In re Motion for Civil Contempt by John Doe*, No. 12-mc-557 (PKC) (E.D.N.Y. Aug. 22, 2012), ECF No. 1. In March 2015, Judge Cogan, then serving as special master, issued an order directing Oberlander to show cause as to why he had not violated the sealing orders and this Court's orders by repeatedly disclosing sealed documents and other information between February 2011 and January 2015. *See id.*, ECF No. 97. Four months later, Judge Cogan referred the matter to the United States Attorney for the Eastern District of New York for a criminal investigation. *See id.*, ECF. No. 117. The United States Attorney's Office for the Eastern District of New York subsequently recused itself and referred the investigation to the United States Attorney for the Northern District of New York.

**B.      Grand Jury and District Court Proceedings**

In April 2016, following Judge Cogan's referral, a grand jury was impaneled in the Eastern District of New York (the "First Grand Jury") to investigate Oberlander's conduct with respect to the sealing orders. Two months later, in June 2016, the First Grand Jury issued the first of at least four subpoenas

6

requesting documents from Oberlander relating to his communications with reporters. Oberlander refused to comply with the subpoena, and the First Grand Jury's term expired on December 14, 2016.

Nevertheless, over four months later, the government, apparently unaware that the First Grand Jury had expired, served Oberlander with another grand jury subpoena (the "April 2017 Subpoena") in connection with the same investigation. This subpoena, dated April 3, 2017, was directed to the custodian of records for Oberlander's law firm and requested the same records as the first subpoena, as well as the custodian's testimony. Neither Oberlander nor a different records custodian appeared to give testimony, and no records were produced. Meanwhile, on April 19, 2017, a new grand jury was impaneled (the "Second Grand Jury") to investigate the same conduct: Oberlander's mishandling of sealed documents and his violation of court-issued sealing orders.

In August 2017, the government filed a motion to compel Oberlander to comply with the April 2017 Subpoena. The district court granted the motion a week later. After eight months and at least nine extensions of time, Oberlander filed a *pro se* motion to quash the subpoena on May 7, 2018.

7

On June 6, 2018, the district court denied Oberlander's motion to quash but directed the government to reissue the April 2017 Subpoena with minor amendments not relevant here. The court further ordered Oberlander to produce the documents demanded by the soon-to-be-reissued subpoena within a month and warned that failure to comply would "result in sanctions, including the imposition of coercive fines or imprisonment pending compliance." Gov't App'x at 133.

On June 12, 2018, in accordance with the district court's direction, the Second Grand Jury issued a revised subpoena (the "June 2018 Subpoena"), which, like the prior two subpoenas, sought records of communications between Oberlander and eight news reporters "involving any matters about Felix Sater" and others occurring between January 11, 2011 and February 1, 2015. Gov't App'x at 136. The June 2018 Subpoena also required the custodian of records to testify before the Second Grand Jury.

On June 22, 2018, Oberlander filed a motion for reconsideration of his motion to quash the April 2017 Subpoena and to stay enforcement of the district

8

court's June 6 order, which the district court denied on June 27, 2018.[1] In so doing, the district court again warned Oberlander that his continued failure to produce responsive documents would result in coercive sanctions.

On July 3, 2018, one day before the production deadline set by the district court's June 6 order, Oberlander produced responsive records for the period beginning on January 9, 2013 – the date on which Oberlander had incorporated his law practice – and continuing through the June 2018 Subpoena's end date. Oberlander subsequently submitted to the district court additional records covering the period from the subpoena's start date to January 8, 2013 – a period in which Oberlander operated his law firm as an unincorporated sole proprietorship. Relying on that fact, Oberlander, ostensibly moving to quash the June 2018 Subpoena, requested that the court review those records *in camera* to determine whether they constituted personal records protected by the Fifth Amendment's "act of production" privilege – an argument that he had already raised, unsuccessfully, in his motion to quash the April 2017 Subpoena. Predictably, on

---

[1] Though Oberlander did not formally style this as a motion to quash the June 2018 Subpoena, that was its practical effect. The June 2018 Subpoena was substantively identical to the April 2017 Subpoena, and a decision to quash the April 2017 Subpoena would apply with equal force to the June 2018 Subpoena. Moreover, as the June 2018 Subpoena was then the operative subpoena in the investigation, Oberlander had no need to quash the old April 2017 Subpoena.

9

September 25, 2018, the district court, treating Oberlander's request as "an additional baseless motion for reconsideration," determined that the records were not protected by the Fifth Amendment and ordered Oberlander to produce them "to the government" within six days. Gov't App'x at 144, 146.

Despite this order, Oberlander still had not produced the withheld documents by October 17, 2018 – the date on which the Second Grand Jury, which issued the June 2018 Subpoena, expired. Five days later, without an impaneled grand jury, the government filed a motion to compel Oberlander to produce all withheld documents as required by the district court's orders and the June 2018 Subpoena. On October 23, 2018, the district court ordered Oberlander to produce any remaining responsive documents by October 31, 2018 or be subject to civil contempt sanctions in the form of a $1,000 daily fine until he complied. After Oberlander claimed that he received late notice of that order, the district court issued yet another order, dated November 8, 2018, that temporarily stayed the October 23 order and directed Oberlander to produce the subpoenaed documents within seven days of receiving the court's November 8 order, again with a $1,000 daily fine to follow for noncompliance thereafter. As before, the deadline imposed

by the district court came and went without Oberlander producing any documents.[2]

On November 16, 2018, Oberlander timely appealed from the district court's November 8, 2018 order. Doc. No. 1. He also challenges the district court's (i) June 6, 2018 order denying his motion to quash the April 2017 Subpoena; (ii) June 27, 2018 and September 25, 2018 orders denying his motions for reconsideration of his motion to quash; and (iii) October 23, 2018 order directing compliance with the June 2018 Subpoena on pain of coercive monetary sanctions. This Court granted Oberlander's motion for a stay of monetary sanctions pending appeal. Doc. No. 34.

## II. Appellate Jurisdiction and Standard of Review

We have jurisdiction over the district court's November 8, 2018 final order imposing contempt sanctions, and the orders preceding it, under 28 U.S.C. § 1291. *See In re Air Crash at Belle Harbor*, 490 F.3d 99, 104–05 (2d Cir. 2007); *Anobile v. Pelligrino*, 303 F.3d 107, 115 (2d Cir. 2002) ("Generally, . . . this Court interprets an appeal from a specific order disposing of the case as an appeal from the final

---

[2] On November 29, 2018, a newly impaneled grand jury, which was still sitting as of February 19, 2019, issued a new subpoena to Oberlander. The new subpoena is identical in all material respects to the June 2018 Subpoena. Though the government moved to compel Oberlander to comply with this new subpoena, the district court has not yet ruled on that motion.

11

judgment, which incorporates all previous interlocutory judgments in that case and permits their review on appeal."). Insofar as Oberlander challenges our jurisdiction and that of the district court, we may consider those issues as well. *See Kuhali v. Reno*, 266 F.3d 93, 100 (2d Cir. 2001) (acknowledging that all Article III courts possess the "inherent jurisdiction . . . to determine their jurisdiction").

"The standard of review for determinations regarding subject-matter jurisdiction is clear error for factual findings, and *de novo* for the legal conclusion as to whether subject[-]matter jurisdiction exists." *Cohen v. Postal Holdings, LLC*, 873 F.3d 394, 398 (2d Cir. 2017) (quoting *Lyndonville Sav. Bank & Tr. Co. v. Lussier*, 211 F.3d 697, 701 (2d Cir. 2000)).

## III. Discussion

Oberlander challenges the district court's sanctions orders and its refusal to quash the subpoenas on various grounds. He argues that the district court: (1) ceased to have subject-matter jurisdiction over the case once the government served the April 2017 Subpoena without a sitting grand jury; (2) lacked the power to issue coercive sanctions to enforce compliance with the April 2017 and June 2018 Subpoenas because the issuing grand juries had expired by the time the sanctions orders had issued; and (3) erred in not quashing the April 2017 and June 2018

12

Subpoenas on the grounds that they were overbroad and issued in bad faith, unduly burdened his First Amendment rights, and compelled him to produce certain documents in violation of his Fifth Amendment "act of production" privilege. We address each of these issues in turn.

**A. Validity of April 2017 Subpoena and Jurisdiction Over Later Proceedings**

Oberlander argues that the district court lacked jurisdiction over all proceedings relating to the April 2017 and June 2018 Subpoenas because the April 2017 Subpoena – which was issued without a sitting grand jury – was "never more than a scrap of paper." Oberlander's Br. at 30. We therefore must determine whether the April 2017 Subpoena was invalid when issued and, if so, whether that fact somehow stripped the district court of jurisdiction to consider any subsequent subpoenas issued by later grand juries containing the same information requests or involving the same underlying conduct.

On the first point, we agree with Oberlander. The April 2017 Subpoena was invalid because it was served by the government in the name of an expired grand jury. That the Second Grand Jury was subsequently impaneled before the subpoena's April 19 return date does not alter this conclusion.

13

It is well settled that more than one grand jury may investigate the same matter. *See United States v. Thompson*, 251 U.S. 407, 413–15 (1920); *see also United States v. Halper*, 590 F.2d 422, 433 n.16 (2d Cir. 1978). Nevertheless, each grand jury's investigation is "separate and independent" from its predecessor's, since an investigation "terminates with the grand jury [that] undertakes it." *Loubriel v. United States*, 9 F.2d 807, 809 (2d Cir. 1926) (Learned Hand, *J.*).[3] On that basis, a subpoena, which is merely an investigative tool, also terminates with the investigating grand jury that issued it. More to the point, the *duty* imposed by a subpoena to produce documents to, or to testify before, a specific grand jury ceases once that grand jury's term expires. *See id.* ("When that [grand jury] adjourned, Loubriel was under no further duty to testify [pursuant to the subpoena] . . . ."). We have never wavered from this long-standing precedent, and at least one other circuit has agreed that each new grand jury must issue its own subpoena. *See In re Grand Jury Proceedings* ("*NITHPO*"), 744 F.3d 211, 217–18 (1st Cir. 2014) (reasoning that to hold otherwise "would render the grand jury subpoena process all but meaningless" and noting that there is "no great administrative difficulty in

---

[3] That *Loubriel* is nearly a century old is neither here nor there; it may be old, but it is "old precedent, and we are bound to follow [it]." *See Vasquez v. GMD Shipyard Corp.*, 582 F.3d 293, 299 (2d Cir. 2009) (internal quotation marks omitted) (treating as binding opinions issued in 1903 and 1909).

14

requiring, as a precondition to the use of coercive contempt power, the issuance of a new subpoena for each new grand jury").[4]

Accordingly, the April 2017 Subpoena was invalid from its inception. The subpoena was labeled "4/4/2016[]," the date on which the First Grand Jury was impaneled, reflecting that the subpoena concerned the First Grand Jury's investigation. Gov't App'x at 15–17. But by April 2017, when the subpoena was issued, the grand jury – and its investigation – had long since terminated. The subpoena was therefore a nullity, since it required Oberlander to produce documents to and appear before a grand jury that was no longer impaneled, in connection with an investigation that had expired in December 2016. Compliance with such a subpoena was obviously impossible, *Loubriel*, 9 F.2d at 809, and the district court lacked the power to compel the impossible through coercive sanctions.

---

[4] We note, however, that two other circuits have held to the contrary. *See In re Sealed Case*, 223 F.3d 775, 778 (D.C. Cir. 2000) ("Appellant has identified no prejudice arising from enforcement of a subpoena where the originally issuing grand jury has expired and another has indisputably carried the investigation forward."); *In re Grand Jury Proceedings*, 658 F.2d 782, 783–84 (10th Cir. 1981) (reasoning that "to hold that a second subpoena is required would simply result in a complete waste of judicial time" and limiting the holding in *Loubriel* to subpoenas calling for testimony before a grand jury). Nevertheless, we find the analysis provided by *Loubriel* and *NITHPO* to be more compelling.

15

But that finding does not end our inquiry. Even though the April 2017 Subpoena was invalid when issued, the district court could clearly enforce the June 2018 Subpoena, which was properly issued by the then-impaneled Second Grand Jury. *See* 28 U.S.C. § 1826(a) (granting district courts the authority to sanction a recalcitrant witness "in any proceeding before or ancillary to any . . . grand jury"); *In re Doe*, 860 F.2d 40, 49 (2d Cir. 1988) (explaining that district courts have "inherent supervisory power" to enforce grand jury subpoenas); *cf. Cosme v. IRS*, 708 F. Supp. 45, 47 (E.D.N.Y. 1989) (holding that the district court had jurisdiction over a summons even though it lacked jurisdiction over two related summonses, which were issued to entities outside of the district). We are aware of no authority suggesting that the issuance of an invalid subpoena automatically strips the court of subject-matter jurisdiction to enforce subsequent subpoenas issued by a properly impaneled and still-sitting grand jury investigating the same alleged misconduct. To the contrary, in other contexts, we have recognized that even "if a jurisdictional defect exists at some time prior to a district court's entry of judgment, the court's judgment is still valid if the jurisdictional defect is cured before final judgment is entered." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 356 (2d Cir. 2011); *see also Hallingby v. Hallingby*, 574 F.3d 51, 56 (2d Cir. 2009) ("[T]he

16

critical issue [is] whether the district court had subject matter jurisdiction at any time before it rendered judgment." (quoting *Briarpatch Ltd. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 301 (2d Cir. 2004)). We therefore have little trouble concluding that the district court had authority to enforce the June 2018 Subpoena while the Second Grand Jury, which issued it, was still impaneled.

**B. Power to Issue Coercive Sanctions to Compel Compliance with a Subpoena After the Issuing Grand Jury Has Expired**

Oberlander next argues that even if the June 2018 Subpoena was validly issued, the district court's October 23, 2018 and November 8, 2018 sanctions orders were invalid because they were issued after the Second Grand Jury had already expired. Because "the law does not compel the impossible," *NITHPO*, 744 F.3d at 212, we agree.

As an initial matter, the district court had jurisdiction to enforce the June 2018 Subpoena when it issued its June 27, 2018 and September 25, 2018 orders. At that time, the subpoena, having been validly issued by a still-sitting grand jury, was enforceable. And had the district court issued coercive sanctions at that time – or at any point before the Second Grand Jury expired on October 17, 2018 – we would have no hesitation in upholding that order. But it did not. The

17

district court instead waited until after the Second Grand Jury's term expired to finally hold Oberlander in contempt.

Once the issuing grand jury expired, Oberlander's duty to comply with the June 2018 Subpoena ceased. *See Loubriel*, 9 F.2d at 809. And, as we previously held in *Loubriel*, Oberlander cannot be "compelled to discharge a duty which ha[s] ended." *Id.* To hold otherwise would place Oberlander in the untenable position of being subject to civil sanctions without the ability to purge himself of contempt. *See Shillitani v. United States*, 384 U.S. 364, 371 (1966) ("Where the grand jury has been finally discharged, a contumacious witness can no longer be confined since he then has no further opportunity to purge himself of contempt.").

The government attempts to sidestep this logic, arguing that Oberlander can still purge himself of contempt because (i) the district court ordered Oberlander to produce documents directly to the government, not the grand jury and (ii) a successor grand jury has since been impaneled to continue the investigation. We disagree.

First, the government does not identify any authority for the district court's orders except the expired June 2018 Subpoena. And, as we held in *Loubriel*, any order to produce evidence pursuant to an expired grand jury's subpoena is "void."

18

9 F.2d at 809; *see also United States v. First Nat'l City Bank*, 396 F.2d 897, 900 n.9 (2d Cir. 1968) ("[T]he punishment [of civil contempt] c[annot] extend beyond the expiration of the life of the Grand Jury.").  The fact that the district court ordered Oberlander to produce the documents to the government directly is of no moment, since the government is not authorized to stand in the shoes of the grand jury.  To hold otherwise would effectively overturn *Loubriel* and, more importantly, reduce the grand jury to a quaint fiction.  *Cf. Branzburg v. Hayes*, 408 U.S. 665, 687 (1972) ("Grand jury proceedings are constitutionally mandated for the institution of federal criminal prosecutions for capital or other serious crimes, and its constitutional prerogatives are rooted in long centuries of Anglo-American history." (internal quotation marks omitted)); *id.* at 690 ("[T]he grand jury plays an important, constitutionally mandated role . . . ."); *Trump v. Vance*, 941 F.3d 631, 643–44 (2d Cir. 2019) ("[T]he grand jury has a central role in our system of federalism . . . [and] [w]e are thus hesitant to interfere with the ancient role of the grand jury." (internal quotation marks omitted)).

Second, as discussed above, a grand jury cannot merely pick up an investigation from where its predecessor left off.  *Loubriel*, 9 F.2d at 809.  Each is a separate entity conducting its own investigation.  Just as evidence and testimony

19

presented to one grand jury must be re-presented to a new grand jury, *see, e.g.*, *In re Grand Jury Matter #3*, 847 F.3d 157, 160 (3d Cir. 2017) (noting that evidence presented to an initial grand jury was re-presented to a subsequent grand jury before it issued a superseding indictment); *see also United States v. Guillen*, No. 17-cr-512 (KMW), 2018 WL 5831318, at *7 (S.D.N.Y. Nov. 7, 2018) (same); *United States v. Allen*, No. 09-cr-329 (RJA), 2014 WL 1745933, at *2 (W.D.N.Y. Apr. 30, 2014) (same), so too must the new grand jury issue new investigative subpoenas to obtain evidence previously sought by but not produced to an earlier grand jury.

To be sure, requiring each subsequent grand jury to issue nearly identical subpoenas may result in more paperwork for the government. But, like the First Circuit, "we see no great administrative difficulty in requiring, as a precondition to the use of coercive contempt power, the issuance of a new subpoena for each new grand jury." *NITHPO*, 744 F.3d at 218. And it certainly will not require much effort on the part of the government to stay abreast of the expiration dates of the grand juries charged with investigating serious and potentially criminal conduct. Indeed, federal law allows for grand jury terms to be extended beyond 18 months when such "an extension is in the public interest." Fed. R. Crim. P. 6(g) (limiting extensions to "no more than 6 months, except as otherwise provided by statute");

*see also* 18 U.S.C. § 3331(a) (allowing for the term of certain "special grand jur[ies]" to be extended up to 36 months when "the district court determines [that] the business of the grand jury has not been completed").

Accordingly, the district court's authority to enforce the June 2018 Subpoena ceased when the issuing grand jury's term expired on October 17, 2018. We therefore vacate the district court's October 23, 2018 and November 8, 2018 sanctions orders for lack of jurisdiction.[5]

That is not to say that the district court stands powerless in the face of Oberlander's recalcitrance and repeated violations of court orders. On remand, the district court is certainly free to consider whether to initiate criminal contempt proceedings against Oberlander.[6] *See* Fed. R. Crim. P. 42 (providing courts with the power to initiate criminal contempt prosecutions); *see also* Fed. R. Crim. P. 17(g) ("The court . . . may hold in contempt a witness who, without adequate excuse,

---

[5] As we vacate the district court's sanctions order, we do not reach Oberlander's alternative arguments that the sanctions were improper because he was not granted a hearing, that the record did not demonstrate that the amount imposed was reasonable, or that he was denied his right to counsel with respect to the sanctions order.

[6] The one-year statute of limitations prescribed by 18 U.S.C. § 3285 applies only to contempt proceedings "within [18 U.S.C. §] 402." Because Oberlander's contempt "was committed in disobedience of a court order entered in an action prosecuted on behalf of the United States," § 402 is inapplicable. *See United States v. Woodard*, 675 F.3d 1147, 1150–51 (8th Cir. 2012) (alterations omitted) (quoting *United States v. Miller*, 588 F.2d 1256, 1262 (9th Cir. 1978)).

21

disobeys a subpoena issued by a federal court in that district.").  Whereas civil contempt seeks to compel compliance with the court's orders for the benefit of the complainant, the purpose of criminal contempt "is punitive, to vindicate the authority of the court."  *In re Weiss*, 703 F.2d 653, 661 (2d Cir. 1983) (quoting *Gompers v. Buck's Stove & Range Co.*, 221 U.S. 418, 441 (1911)); *see also* 18 U.S.C. § 401 (providing that a court shall have the power to punish "contempt of its authority").  As explained above, the district court here could not hold Oberlander in civil contempt because he would be unable to purge himself of that contempt.  But that inability is irrelevant in a criminal contempt action, which is punitive in nature.  *See In re Grand Jury Proceedings*, 871 F.2d 156, 162 (1st Cir. 1989) (recognizing that "the court always has available the sanction of criminal contempt" where a witness has not complied with an expired grand jury's subpoena); *cf. Shillitani*, 384 U.S. at 371 ("Having sought to deal *only with civil contempt*, the District Courts lacked authority to imprison petitioners for a period longer than the term of the grand jury." (emphasis added)).

**C.    Motion to Quash**

Our decision that the June 2018 Subpoena is now unenforceable does not render Oberlander's motion to quash moot.  We have jurisdiction to review the

issues raised in that motion because this dispute is "capable of repetition, yet evading review." *United States. v. Juvenile Male*, 564 U.S. 932, 938 (2011) (internal quotation marks omitted).

This exception to the mootness doctrine applies "where (1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again." *Id.* (internal quotation marks and alterations omitted). Both requirements are met here. As the history of this dispute demonstrates, the relatively short duration of the grand jury has made it practically impossible to fully litigate Oberlander's challenges to the subpoena. *See In re Grand Jury Subpoena Served Upon Doe*, 781 F.2d 238, 243 (2d Cir. 1986) (en banc) ("Grand jury investigations must proceed expeditiously. The length of time required for appellate review [of a motion to quash a subpoena] often is protracted."). Moreover, a successor grand jury has already initiated a similar investigation and has issued a new subpoena seeking the same documents and testimony as the June 2018 Subpoena. And, as noted above, even if that grand jury has itself expired, the district court may well choose to institute criminal contempt proceedings against Oberlander, which would no doubt raise similar issues

23

concerning the June 2018 Subpoena's validity. It is therefore apparent that this dispute is alive and well. *See id.* (holding that a motion to quash a grand jury subpoena falls within the "capable of repetition yet evades review" exception to mootness (internal quotation marks omitted)); *see also NITHPO*, 744 F.3d at 218–19 (holding that a challenge to a subpoena is not moot where a successor grand jury is investigating the same conduct). Accordingly, there is no bar to our consideration of Oberlander's motion to quash on the merits.

Oberlander argues that the district court abused its discretion in denying his motion to quash the June 2018 Subpoena because the subpoena (i) was overbroad and issued in bad faith; (ii) improperly burdened his First Amendment rights; and (iii) called for the production of incriminating personal records in violation of the Fifth Amendment. We disagree.

**1. Overbreadth & Bad Faith**

Oberlander's contention that the June 2018 Subpoena was invalid because it was overbroad and issued in bad faith fails for a number of reasons.

First, the district court did not abuse its discretion in finding that the June 2018 Subpoena was reasonable in scope. Because the grand jury's function "is to inquire into all information that might possibly bear on its investigation until it has identified an offense or has satisfied itself that none has occurred," the grand

24

jury necessarily "paints with a broad brush." *United States v. R. Enters., Inc.*, 498 U.S. 292, 297 (1991). Thus, a grand jury subpoena is unreasonably broad only if "there is no reasonable possibility that the category of materials the [g]overnment seeks will produce information relevant to the general subject of the grand jury's investigation." *Id.* at 301. Oberlander, as the party seeking to quash the subpoena, bears the heavy burden of making that showing. *In re Liberatore*, 574 F.2d 78, 83 (2d Cir. 1978) ("[T]he party seeking to quash a subpoena must carry the burden of showing that the information sought bears no conceivable relevancy to any legitimate object of investigation by the federal grand jury." (internal quotation marks omitted)).

Oberlander argues that he has met this burden because the subpoena demanded the production of records for all communications between Oberlander and eight reporters that in any way concerned the individuals and entities associated with the litigations underlying the sealing orders. According to Oberlander, the subpoena instead should have been limited to only those communications concerning information subject to the sealing orders. But given the "broad brush" with which grand juries paint, the subpoena was sufficiently related to Judge Cogan's criminal referral. *See R. Enters.*, 498 U.S. at 297. This is

25

especially true in light of the grand jury's authority to "investigate merely on suspicion that the law is being violated, or even just because it wants assurance that it is not." *United States v. Morton Salt Co.*, 338 U.S. 632, 642–43 (1950).

Second, the district court also reasonably concluded that the subpoena was not issued in bad faith or otherwise used for an improper purpose. "A grand jury subpoena is presumed to have a proper purpose," and the party challenging the subpoena "bears the burden of showing that the grand jury has exceeded its legal powers." *United States v. Salameh*, 152 F.3d 88, 109 (2d Cir. 1998) (citing *R. Enters.*, 498 US. at 300–01). To do so, that party "must present 'particularized proof' of an improper purpose to overcome the presumption of propriety of the grand jury subpoena." *Id.* (quoting *United States v. Mechanik*, 475 U.S. 66, 75 (1986)).

Oberlander's arguments fall well short of that mark. Most of his allegations predate the criminal referral and concern the conduct of the referring court, rather than the government or the grand jury. For example, Oberlander suggests – without any support – that Judge Cogan was biased against him. His remaining allegations fare no better. For instance, Oberlander bemoans the length of the investigation, but fails to explain why the investigation's timeline was unreasonable or how it offers "particularized proof" of bad faith. *See Salameh*, 152

26

F.3d at 109 (internal quotation marks omitted). Oberlander also suggests that the government intentionally sought to enforce an invalid subpoena in initiating this action, and then intentionally concealed that fact. But that claim is at best speculative. And although Oberlander asserts that the conduct under investigation did not violate valid court orders, even if true, that would not render the investigation improper. *See, e.g.*, *United States v. Williams*, 504 U.S. 36, 48 (1992) (noting that a grand jury "need not identify the offender it suspects, or even the precise nature of the offense it is investigating" (internal quotation marks omitted)); *R. Enters.*, 498 U.S. at 297.

## 2. First Amendment Burdening

Oberlander next argues that the district court erred in finding that the subpoenas did not burden his First Amendment rights, and that it should have applied "a heightened scrutiny, compelling interest test" to the subpoena, because it sought documents related to Oberlander's communications with the press. Oberlander's Br. at 31. But a potential witness is not excused from compliance with a grand jury subpoena merely because the subpoena concerns the witness's communications with reporters. *See Branzburg*, 408 U.S. at 695, 700. And this Court previously rejected Oberlander's First Amendment challenges to the

27

underlying sealing orders and injunctions. *See, e.g.*, *Roe*, 428 F. App'x at 66–67. Oberlander's First Amendment arguments are thus meritless.

### 3. Fifth Amendment Act of Production Privilege

Lastly, Oberlander argues that the district court abused its discretion in refusing to permit him to withhold certain documents on Fifth Amendment grounds. In particular, Oberlander tells us that he is entitled to assert a Fifth Amendment privilege with respect to all documents predating the January 2013 incorporation of his law firm. The district court concluded that those documents were created in Oberlander's professional capacity and were therefore ineligible for protection under the Fifth Amendment. We agree with the district court's ultimate conclusion, though we affirm on slightly different grounds. *See Thyroff v. Nationwide Mut. Ins. Co.*, 460 F.3d 400, 405 (2d Cir. 2006) ("[W]e are free to affirm a decision on any grounds supported in the record, even if it is not one on which the trial court relied.").

The Fifth Amendment guarantees that no individual "shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V; *see also Lefkowitz v. Turley*, 414 U.S. 70, 77 (1973) (acknowledging that the Fifth Amendment may be invoked outside of criminal proceedings). Although that guarantee plainly applies to statements, its reach is not so limited – it applies to

28

any "compelled incriminating communications . . . that are 'testimonial' in character." *United States v. Hubbell*, 530 U.S. 27, 34 (2000). "Because the act of producing documents can be both incriminating and testimonial . . . a subpoenaed party may be able to resist production on Fifth Amendment grounds." *In re Grand Jury Subpoena Issued June 18, 2009 ("ASC")*, 593 F.3d 155, 157 (2d Cir. 2010); *see also Fisher v. United States*, 425 U.S. 391, 410 (1976) (acknowledging that the Fifth Amendment guarantees an act-of-production privilege).

It is well understood, however, that an individual may not assert a Fifth Amendment privilege on behalf of a "collective entity" – *i.e.*, "an[y] organization which is recognized as an independent entity apart from its individual members," such as a corporation or partnership. *Bellis v. United States*, 417 U.S. 85, 92 (1974); *see also Braswell v. United States*, 487 U.S. 99, 104–10 (1988); *ASC*, 593 F.3d at 157–59. This "collective entity" exception applies to any testimonial privilege under the Fifth Amendment, including the act-of-production privilege. *See Braswell*, 487 U.S. at 109–10 ("We cannot agree . . . that [*Fisher*] rendered the collective entity rule obsolete."). Thus, when a witness refuses to produce documents on Fifth Amendment grounds, the court must distinguish between those documents that

29

are personal in nature, and therefore may be withheld, and those that are corporate in nature, and therefore fall within the "collective entity" exception.

Although drawing this distinction is not always an easy task, we have developed a non-exhaustive multi-factor balancing test under which district courts are to consider:

> [W]ho prepared the document, the nature of its contents, its purpose or use, who maintained possession and who had access to it, whether the corporation required its preparation, and whether its existence was necessary to the conduct of the corporation's business.

*Grand Jury Subpoena Duces Tecum Dated Apr. 23, 1981 Witness v. United States* ("*Grand Jury Witness*"), 657 F.2d 5, 8 (2d Cir. 1981).

Here, Oberlander argues that the documents created when he was a sole proprietor are personal in nature and thus do not fall within the "collective entity" exception. Oberlander is correct to the extent that an unincorporated sole proprietorship is not a "collective entity," and its documents are therefore entitled to Fifth Amendment protection. *See United States v. Doe*, 465 U.S. 605, 612–14 (1984) (holding that the compelled production of a sole proprietorship's records would violate the Fifth Amendment); *see also Braswell*, 487 U.S. at 104 ("Had petitioner conducted his business as a sole proprietorship, *Doe* would require that he be provided the opportunity to show that his act of production would entail

30

testimonial self-incrimination."). But simply because a document was not created by a corporation does not mean that it cannot later become a corporate record. Indeed, the identity of a document's creator is merely one of many factors to be considered in divining its nature. *See Grand Jury Witness*, 657 F.2d at 8.

Having applied the *Grand Jury Witness* test to the facts in the record before us, we conclude that the documents targeted by the June 2018 Subpoena are corporate in nature and thus exempt from the Fifth Amendment. The subpoena was directed to the custodian of records for Oberlander's corporate entity, thereby reaching only records in the corporation's possession. Moreover, the records were maintained for corporate purposes and necessary to the conduct of the corporation's business: they pertained to the representation of clients that began pre-incorporation but continued post-incorporation. For example, Oberlander represented Jody Kriss from at least 2010 through 2015. *See* Letter Motion, *Kriss v. BayRock Grp., LLC*, 10-cv-3959 (LGS) (S.D.N.Y. Mar. 26, 2015), ECF No. 134. Thus, any pre-incorporation records concerning Oberlander's representation of Kriss have now become necessary corporate documents. Accordingly, though these records were created before Oberlander incorporated his law firm, they have since

31

become corporate in nature and are exempt from protection under the Fifth Amendment.

## IV. Conclusion

For the reasons stated above, we **VACATE** the district court's October 23, 2018 and November 8, 2018 orders.  We **AFFIRM** the district court's June 27, 2018 and September 25, 2018 orders. We further **REMAND** to the district court for proceedings consistent with this opinion.