10-4119-cr(L)
United States v. Graham, et al.

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

# SUMMARY ORDER

Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this court's Local Rule 32.1.1. When citing a summary order in a document filed with this court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.


At a stated term of the United States Court of Appeals for the Second Circuit, held at the Richard C. Lee United States Courthouse, 141 Church Street, in the City of New Haven, on the 1st day of May, two thousand twelve.

PRESENT:

JOHN M. WALKER, JR.,
JOSEPH M. MCLAUGHLIN,
JOSÉ A. CABRANES,

*Circuit Judges.*

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

UNITED STATES OF AMERICA,

*Appellee,*

-v.-

HAROLD RICHARD GRAHAM, MITCHELL REISMAN,
GREGORY C. SCARLATO, HARRY K. KAHALE,

*Defendants-Appellants.*

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

Nos. 10-4119-cr (L)
10-4231-cr (Con)
10-4557-cr (Con)
11-1043-cr (Con)

| | |
|---|---|
| **FOR APPELLEE:** | TANYA A. HILL, Assistant United States Attorney (Amy Busa & Jo Ann M. Navickas, Assistant United States Attorneys, *of counsel*), *for* Loretta E. Lynch, United States Attorney for the Eastern District of New York, Brooklyn, NY. |
| **FOR DEFENDANTS-APPELLEES:** | JEREMY GUTMAN , New York, NY, *for* defendant-appellant Harold Richard Graham, |

1

B. ALAN SEIDLER, New York, NY, *for* defendant-appellant Mitchell Reisman,

RICHARD D. WILLSTATTER, Green & Willstatter, White Plains, NY, *for* defendant-appellant Gregory C. Scarlato,

ALLEN LASHLEY, Brooklyn, NY, *for* defendant-appellant Harry K. Kahale.

Appeal from judgments of conviction of the United States District Court for the Eastern District of New York (Kiyo A. Matsumoto, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgments of the District Court be **AFFIRMED**.

Defendants-appellants Harold Richard Graham, Mitchell Reisman, Gregory C. Scarlato, and Harry K. Kahale appeal from separate judgments of conviction entered in the District Court. We assume the parties' familiarity with the facts and procedural history of the case, expounding on each only where necessary below.

## BACKGROUND

The defendants were charged in a seven-count Superseding Indictment with conspiracy to commit mail and wire fraud and various individual counts of mail and wire fraud. The Indictment charged that, between 2003 and 2008, the defendants conspired to fraudulently solicit investors and lenders for B.I.M. Mining Corporation ("B.I.M."), a Nevada-based corporation which the defendants falsely portrayed as possessing significant gold and mineral rights around the world. In order to secure investments and loans, the defendants misrepresented B.I.M.'s size and financial state, claiming that it was "cash poor but asset rich" and needed investments in cash in order to withdraw and process its gold and mineral reserves. In exchange for investor money, the defendants issued fraudulent "Gold Delivery Certificates," which promised strong investment returns within specified periods of time, usually between two and twelve months. When these certificates reached maturation without any return on investment, the defendants issued letters providing various fraudulent explanations for the delay in redemption. In order to perpetuate the fraud, the defendants used investor and lender money to repay earlier investors and lenders, as well as to pay for personal expenses.

After a nearly three-week trial, all four defendants were convicted on all seven counts. Each defendant subsequently moved for a judgment of acquittal. Those motions were denied and the defendants timely appealed.

## DISCUSSION

The appellants raise multiple, and occasionally overlapping, arguments on appeal, and each joins in the arguments raised by the others, pursuant to Federal Rule of Appellate Procedure 28(I). We address each of their arguments in turn, ultimately finding none of them sufficient to warrant vacating the judgment of the District Court.

2

**A.      Severance**

Scarlato argues that the District Court abused its discretion in denying his renewed motion to sever his trial from that of Reisman.[1] He maintains that, as a mere agent of B.I.M., he honestly believed that he was securing funds to assist the company in recovering highly valuable assets and that, had he been tried separately, he would have been able to elicit evidence that Reisman was a "flat-out con man" and thereby persuade the jury that, in contrast to Reisman, he lacked any intent to defraud. In short, he contends that, in light of their "mutually antagonistic defenses," his trial should have been severed from Reisman's.

Pursuant to Federal Rule of Criminal Procedure 14, "[i]f the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires." Motions to sever under Rule 14 are committed to the sound discretion of the district court and are "[c]onsidered virtually unreviewable." *United States v. Diaz*, 176 F.3d 52, 102 (2d Cir. 1999) (internal quotation marks omitted). "To show an abuse of discretion, a defendant must demonstrate that the denial of the motion caused substantial prejudice, that is, prejudice so severe as to amount to a denial of a constitutionally fair trial." *Id.* (internal quotation marks and citation omitted). This highly deferential standard reflects the preference of the federal system for joint trials of defendants who are indicted together in order to promote efficiency and avoid the problem of inconsistent verdicts. *See Zafiro v. United States*, 506 U.S. 534, 537 (1993). We have emphasized that joint trials are "particularly appropriate in circumstances where the defendants are charged with participating in the same criminal conspiracy." *United States v. Spinelli*, 352 F.3d 48, 55 (2d Cir. 2003).

Applying this deferential standard, we affirm the decision of the District Court denying Scarlato's motions to sever for substantially the reasons stated in its Memorandum and Order of December 23, 2009, and its order of February 3, 2010. As the District Court correctly found, "evidence of Reisman's involvement in other, totally unrelated business ventures does not exculpate Scarlato . . . because Reisman's other business dealings neither negate, nor are probative of, [Scarlato's] specific intent . . . to defraud B.I.M. investors as charged in the indictment." Furthermore, the District Court expressly permitted Scarlato to elicit testimony from the victims regarding his role in the fraud relative to Reisman. In short, nothing prevented Scarlato from making essentially the same arguments he presses on appeal before the jury.

We therefore conclude that the District Court's denial of his motions to sever did not cause him "prejudice so severe as to amount to a denial of a constitutionally fair trial." *Diaz*, 176 F.3d at 102.

---

[1] All four defendants initially moved to sever their trials from one another. After the District Court denied these motions, Scarlato renewed his motion just before trial, requesting that his own trial be severed from Reisman's so that evidence of Reisman's prior fraudulent activity could be admitted, allowing Scarlato to more effectively argue his own innocence of any fraudulent intent.

**B.      Evidentiary Rulings**

Kahale, Graham, and Scarlato raise two separate challenges to evidentiary rulings of the District Court, which we review in turn.

1.      Admission of Co-Conspirator Statements

Kahale argues that the District Court committed clear error in admitting hearsay statements made by Reisman and Scarlato while soliciting B.I.M. investors that were not in furtherance of the conspiracy.

"[W]e afford district courts wide latitude in determining whether evidence is admissible," and so "review . . . evidentiary rulings for abuse of discretion, reversing only if we find manifest error." *United States v. Miller*, 626 F.3d 682, 687–88 (2d Cir. 2010) (internal quotation marks and alterations omitted).[2]

Under Federal Rule of Evidence 801(d)(2)(E), a statement that would otherwise be inadmissible hearsay may be admitted if it "is offered against an opposing party and was made by the party's coconspirator during the course of and in furtherance of the conspiracy." To admit a statement under this coconspirator exception, "a district court must find two factors by a preponderance of the evidence: first, that a conspiracy existed that included the defendant and the declarant; and second, that the statement was made during the course of and in furtherance of that conspiracy." *United States v. Gigante*, 166 F.3d 75, 82 (2d Cir. 1999). A statement is "in furtherance of a conspiracy" if it was "in some way . . . designed to promote or facilitate achievement of the goals of that conspiracy, as by, for example, . . . communicating with a person who is not a member of the conspiracy in a way that is designed to help the coconspirators to achieve the conspiracy's goals." *United States v. Rivera*, 22 F.3d 430, 436 (2d Cir. 1994).

Having reviewed the record, we are satisfied that the District Court's findings that statements made by Reisman and Scarlato were made in furtherance of the conspiracy and that Kahale was a member of the conspiracy are supported by a preponderance of the evidence. We therefore cannot conclude that the District Court committed error, let alone plain error, in allowing the statements to be admitted into evidence.

2.      Admission of Document Server's Testimony Regarding Subpoena Responses

Both Graham and Scarlato argue that the District Court committed error by admitting the testimony of an FBI case agent, who testified that, prior to trial, he served a government subpoena on

---

[2] The Government argues that, because Kahale did not raise this claim of error in the District Court, our review should be for plain error. However, the Government concedes that Kahale's co-defendant, Graham, objected to the admission of Reisman's and Scarlato's statements, and each defendant joined in the objections of the others. We therefore deem the claim preserved and review for abuse of discretion.

B.I.M. seeking certain documents establishing the company's entitlement to gold and nickel babbitt, and that B.I.M.'s response to the subpoena, which he reviewed, did not contain any documents indicating that B.I.M. had any such gold or mineral rights.

Graham contends the agent should have been precluded from testifying because his testimony constituted double hearsay and did not qualify under the business-records exception of Federal Rules of Evidence 803(6) or 803(7). Citing *Crawford v. Washington*, 541 U.S. 36 (2004), Scarlato argues that admission of the agent's testimony violated his rights under the Confrontation Clause of the Sixth Amendment, because the response to the subpoena was a testimonial statement of a witness (B.I.M.'s custodian of records) who was not produced to testify despite being available and whom the defendants had not had a chance to cross-examine.

Whether a statement is hearsay is a matter of law, which we review *de novo. United States v. Ferguson*, – F.3d –, 2011 WL 6351862, at *17 (2d Cir. Dec. 19, 2011). The District Court concluded that the agent's testimony was not hearsay because it was not offered to prove the truth of the matters stated. We agree. The agent testified simply that he had served a document subpoena on B.I.M. and that certain of the requested documents were not returned in response to the subpoena. He did not testify that the requested documents in fact did not exist, let alone that the absence of the documents signified that B.I.M. did not possess any gold or mineral rights. Similarly, we are not persuaded that the Confrontation Clause was implicated here. Even if the subpoena responses constituted a testimonial statement by B.I.M.'s custodian of records, those responses were not themselves admitted. Rather, it was only the FBI agent who testified, on the basis of his own (albeit limited) personal knowledge, regarding what was contained in the response. The defendants were free to cross-examine the agent, and, indeed, doing so would (and did) expose the limits of his knowledge.

In any event, we conclude that any error in admitting the FBI agent's testimony regarding B.I.M.'s document production was harmless. *See United States v. McClain*, 377 F.3d 219, 222 (2d Cir. 2004) (admission of evidence in violation of the Confrontation Clause is "reviewable for harmless error"). In making this determination, we take into account: (1) "the strength of the government's case"; (2) "the degree to which the statement was material to a critical issue"; (3) "the extent to which the statement was cumulative"; and (4) "the degree to which the government emphasized the erroneously admitted evidence in its presentation of the case." *United States v. Reifler*, 446 F.3d 65, 87 (2d Cir. 2006). Although no factor is dispositive, "[t]he strength of the prosecution's case is probably the single most critical factor." *Id.* (alteration in original) (internal quotation marks omitted).

The point of the FBI agent's testimony was to provide further circumstantial evidence that, despite the representations the defendants made to their victims, B.I.M. in fact possessed limited-to-nonexistent gold and mineral rights and was not a financially stable enterprise. In this regard, the agent's testimony was cumulative of other evidence adduced at trial tending to show that B.I.M. did not have the assets it claimed to possess. This included the testimony, on cross-examination, of one of the defendants' own witnesses, the owner of a mining concern, who testified unequivocally that B.I.M. did not have rights to any gold based on contracts with his company. In addition, B.I.M.'s bank account showed that the company had limited funds, consisting mostly of investor money, from which the primary expenditures were withdrawals and checks made out to "cash," and from which no meaningful

transactions involving gold were derived. Given this and other evidence, we are persuaded that the admission of the agent's testimony, to the extent it was erroneous, was harmless.

## C.  Jury Charge

Graham argues that the District Court violated his due process rights by failing to instruct the jury that the Government was required to prove the victims' "justifiable reliance . . . on a misrepresentation or material omission."

"We review *de novo* the propriety of jury instructions." *United States v. Naiman*, 211 F.3d 40, 50 (2d Cir. 2000). "A jury instruction is erroneous if it misleads the jury as to the correct legal standard or does not adequately inform the jury on the law." *United States v. Walsh*, 194 F.3d 37, 52 (2d Cir. 1999) (internal quotation marks omitted). However, we will only reverse a conviction based on improper jury instructions "if the instructions, viewed as a whole, caused the defendant prejudice." *Naiman*, 211 F.3d at 51.

Graham's request was premised on the fact that, under New York law, justifiable reliance is essential to establishing civil liability for the type of fraud charged in this case. It is not, however, an essential element of mail fraud or wire fraud under federal criminal law. As the Supreme Court has made clear, "[t]he common-law requirement[] of 'justifiable reliance' . . . plainly ha[s] no place in the federal fraud statutes." *Neder v. United States*, 527 U.S. 1, 24 –25 (1999). This is because the fraud statutes criminalize the "'scheme to defraud,' rather than the completed fraud." *Id.* at 25; *see also Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 648 (2008) ("Using the mail to execute or attempt to execute a scheme to defraud is indictable as mail fraud . . . even if no one relied on any misrepresentation.").

Accordingly, because "justifiable reliance" is not an element of mail fraud or wire fraud under federal criminal law, the District Court did not err in refusing Graham's requested instruction.

## D.  Sufficiency Challenges

Scarlato and Reisman challenge the sufficiency of the evidence supporting their convictions, each arguing principally that he lacked the intent to defraud.[3] Each defendant moved for a judgment of acquittal under Rule 29 of the Federal Rules of Criminal Procedure following the return of the jury's verdict.

Defendants challenging the sufficiency of the evidence supporting their convictions face a "heavy burden." *United States v. Aguilar*, 585 F.3d 652, 656 (2d Cir. 2009). A jury's verdict must be sustained if, "viewing the evidence in the light most favorable to the prosecution, *any* rational trier of

---

[3] Scarlato also contends that no venue existed as to Count Six of the indictment. However, because he failed to raise the argument prior to trial, despite the defect in Count Six being apparent on the face of the indictment, he has waived it on appeal. *See United States v. Price*, 447 F.2d 23, 27 (2d Cir. 1971).

6

fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). Applying this standard, we affirm the District Court's sufficiency findings for substantially the reasons stated in its persuasive and comprehensive Memorandum & Order of September 27, 2010, denying the defendants' Rule 29 motions. *See* Memorandum & Order, *United States v. Kahale, et al.*, No. 09-cr-159 (Sept. 27, 2010) ECF No. 378.

In order to convict on charges of mail or wire fraud, a jury must find proof beyond a reasonable doubt of fraudulent intent, meaning "that the defendant had a conscious, knowing intent to defraud . . . and that the defendant contemplated or intended some harm to the property rights of the victim." *United States v. Guadagna*, 183 F.3d 122, 129 (2d Cir. 1999) (internal quotation marks and brackets omitted). Proof of fraudulent intent may be established through circumstantial evidence. *Id.*

Scarlato contends that the evidence at trial showed that he honestly believed that B.I.M. was a legitimate venture, which really had rights to the assets that he represented it possessed. He points to the fact that he transmitted to B.I.M. at least some small portion of the money he obtained from victims on its behalf.

We agree with the District Court that the evidence at trial was sufficient to prove Scarlato's fraudulent intent. The evidence revealed that Scarlato was, in the District Court's words, "prolific in his recruitment of investors for B.I.M." He also attempted to mollify victims who complained that they had seen no return on their investments. He continued to "pitch" B.I.M. as a solid investment even as he was aware of its failure to make returns, and even as he spent investor funds on personal items, including a new pickup truck. From these and other facts, a rational juror could certainly conclude that Scarlato was aware that B.I.M. was not using investor funds to recover gold and mineral assets, and yet persisted in soliciting these funds in an effort to enrich himself at the victims' expense.

Reisman similarly claims that the evidence did not support a finding that he acted with the intent to defraud investors. He insists that he performed due diligence with regard to B.I.M. and its principals and that he, himself, was a victim of a scheme concocted by Kahale, Graham, and Scarlato. We reject Reisman's arguments, as well, for the reasons stated by the District Court. Reisman's argument that he was a victim of his co-defendants is audacious, inasmuch as he kept most of the money he took from the victims of the scheme. His solicitation of a $100,000 from Vernon Wetmore is itself sufficient to sustain the jury's verdict. Reisman did not forward any of this investment to B.I.M., instead using it for his own personal expenses, including the purchase of a house.

In sum, we agree with the District Court that there was sufficient evidence from which a rational jury could find both Scarlato and Reisman guilty of the charges beyond a reasonable doubt. *See* Memorandum & Order, *United States v. Kahale, et al.*, No. 09-cr-159 (Sept. 27, 2010) ECF No. 378. Accordingly, we reject their sufficiency arguments.

**E.     Sentencing**

Scarlato and Reisman also challenge their sentences as procedurally and/or substantively unreasonable.

We review the reasonableness of a district court's sentencing determinations under a "deferential abuse-of-discretion standard." *Gall v. United States*, 552 U.S. 38, 41 (2007). A sentence will therefore be upheld unless "the district court's decision cannot be located within the range of permissible decisions or is based on a legal error or clearly erroneous factual finding." *United States v. Villafuerte*, 502 F.3d 204, 206 (2d Cir. 2007) (internal quotation marks omitted). "This form of appellate scrutiny encompasses two components: procedural review and substantive review." *United States v. Cavera*, 550 F.3d 180, 189 (2d Cir. 2008) (*en banc*). A review for substantive reasonableness examines the length and severity of the sentence in light of the statutory sentencing factors enumerated in 18 U.S.C. § 3553, while "[p]rocedural reasonableness concerns the procedures a district court employs in arriving at a sentence." *Villafuerte*, 502 F.3d at 206.

Scarlato argues that his sentence was procedurally unreasonable because it was based on an erroneous loss calculation. Specifically, he contends that a total of $395,000 in losses from three different victims should not have been attributed to him because they were not reasonably foreseeable to him. A district court need only make a "reasonable estimate" of the loss amount for purposes of determining a defendant's offense level under the Sentencing Guidelines. *See* U.S.S.G. § 2B1.1 cmt. n. 3(C). The loss amount attributable to a particular defendant includes not only the loss caused by the defendant's own acts and omissions, but also "in the case of jointly undertaken criminal activity . . . all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity." U.S.S.G. § 1B1.3(a)(1)(B); *see also United States v. Royer*, 549 F.3d 886, 905 (2d Cir. 2008). The District Court found that the defendants worked in concert, using the same "pitch" to attract investors and that it was therefore reasonably foreseeable to Scarlato that his co-defendants would defraud victims separately from him. Given the facts in the record, we conclude that this finding was not clearly erroneous. Accordingly, the losses suffered by those victims were reasonably included in Scarlato's loss amount.

Reisman challenges the substantive reasonableness of his sentence, arguing that the sentence of incarceration for 51 months was excessive in view of his personal characteristics. The sentence Reisman received was 46 months less than that recommended by the United States Probation Office in its Presentence Investigation Report and at the low end of the Guideline range that resulted after the District Court recalculated the offense level and granted Reisman a four-level downward departure in recognition of the fact that he had not been a part of the conspiracy for as long as the other defendants. Although there is no presumption that a sentence within the Guidelines range is reasonable, we have recognized "that in the overwhelming majority of cases, a Guidelines sentence will fall comfortably within the broad range of sentences that would be reasonable in the particular circumstances." *United States v. Fernandez*, 443 F.3d 19, 27 (2006). Reisman has provided us with no basis for concluding that the Guidelines sentence imposed by the District Court falls outside the broad range of reasonable sentences.

## F.     Ineffective Assistance of Counsel

Scarlato and Reisman each allege that their trial attorneys rendered ineffective assistance of counsel, necessitating the reversal of their convictions. Scarlato claims that his attorney seriously erred in failing to move to dismiss Count Six for want of venue ahead of trial. *See* note 3, *ante*. Reisman argues,

more generally, that his counsel's performance was deficient insofar as he called no witnesses and placed no documents into evidence.

To prevail on a claim of ineffective assistance of counsel, a defendant must establish both (1) that defense counsel's actions or omissions fell below an objective standard of reasonableness and (2) that there exists a reasonable probability that, but for counsel's unprofessional errors, the result of his case would have been different. *Strickland v. Washington*, 466 U.S. 688, 694 (1984). When presented with an ineffective-assistance claim on direct appeal, we "may do one of three things: (1) decline to hear the claim, permitting the appellant to raise the issue as part of a subsequent [28 U.S.C.] § 2255 petition; (2) remand the claim to the district court for necessary fact-finding; or (3) decide the claim on the record before us." *United States v. Leone*, 215 F.3d 253, 256 (2d Cir. 2000). We have often expressed our "baseline aversion to resolving ineffectiveness claims on direct review." *United States v. Morris*, 350 F.3d 32, 39 (2d Cir. 2003) (internal quotation marks omitted); *see also United States v. Gaskin*, 364 F.3d 438, 467–68 (2d Cir. 2004) ("[I]n most cases a motion brought under [28 U.S.C.] § 2255 is preferable to direct appeal for deciding claims of ineffective assistance because the district court is best suited to developing the facts necessary to determining the adequacy of representation." (internal quotation marks omitted)).

Here, we conclude that the record on appeal is insufficient for us to resolve either claim. With respect to Scarlato's claim, it is not clear whether his counsel was unaware that Count Six contained a jurisdictional defect or whether in fact he strategically decided not to challenge venue so as to prevent the Government from separately indicting Scarlato in the Western District of New York, where venue for Count Six actually lay. Similarly, though Reisman faults his trial counsel for failing to call certain witnesses and introduce certain documentary evidence, it is not clear on the present record whether this decision may in fact have been one of sound trial strategy. As the Government points out, much of the testimony and documentary evidence Reisman refers to was not exculpatory and could have done him more harm than good. Accordingly, we decline to reach the merits of the claim of ineffective assistance of counsel, without prejudice to the defendants' ability to raise the issue in a collateral proceeding. *See, e.g.*, *United States v. Hasan*, 586 F.3d 161, 170 (2d Cir. 2009). We of course express no view on the merits of these claims.

## CONCLUSION

We have considered all of the defendants' arguments on appeal and, having conducted an independent review of the record, we find no error in the District Court's careful handling of this case. Accordingly, we AFFIRM the judgments of the District Court.

FOR THE COURT,
Catherine O'Hagan Wolfe, Clerk of Court