*United States v. Costanzo*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 12th day of September, two thousand twenty-five.

PRESENT:
> JOSEPH F. BIANCO,
> SARAH A. L. MERRIAM,
> MARIA ARAÚJO KAHN,
> *Circuit Judges*.

---

UNITED STATES OF AMERICA,

     *Appellee*,

    v.

JOHN COSTANZO, JR., MANUEL RECIO,

     *Defendants-Appellants*,

DAVID MACEY, LUIS GUERRA,

     *Intervenors*.

24-1310-cr (L);
24-1469-cr (Con.)

---

FOR APPELLEE:

MATHEW ANDREWS, Assistant United States Attorney (Emily Deininger and Michael D. Maimin, Assistant United States Attorneys, *on the brief*), *for* Matthew Podolsky, Acting United

States Attorney for the Southern District of New York, New York, New York.

FOR DEFENDANT-APPELLANT:       DANIEL J. O'NEILL (Bronwyn C. Roantree, *on the brief*), Shapiro Arato Bach LLP, New York, New York, *for* John Costanzo.

RONALD GAINOR, Gainor & Donner, Miami, Florida, *for* Manuel Recio.

FOR INTERVENORS:       Andrew Z. Michaelson, King & Spalding LLP, New York, New York, and Orlando Do Campo, Do Campo & Thornton, P.A., Miami, Florida.

Appeal from the judgments of the United States District Court for the Southern District of New York (J. Paul Oetken, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the amended judgment against John Costanzo, Jr., entered on April 26, 2024, and the judgment against Manuel Recio, entered on May 14, 2024, are **VACATED** with respect to forfeiture, but **AFFIRMED** in all other respects. The forfeiture orders against Costanzo and Recio, entered on April 24, 2024, and May 14, 2024, respectively, are **VACATED**. The case is **REMANDED** to the district court with respect to the forfeiture orders for further proceedings consistent with this summary order.

Defendants-Appellants John Costanzo, Jr. and Manuel Recio appeal from the district court's judgments of conviction and forfeiture orders, entered after a jury trial at which they were found guilty on all counts. We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal, to which we refer only as necessary to explain our decision.

On May 18, 2022, Costanzo and Recio were indicted and charged with conspiracy to commit bribery, in violation of 18 U.S.C. § 371 (Count One); substantive bribery, in violation of

18 U.S.C. § 201 (Counts Two and Three);[1] conspiracy to commit honest services fraud, in violation of 18 U.S.C. § 1349 (Count Four); and honest services fraud, in violation of 18 U.S.C. § 1343 (Count Five). The charges arose from a bribery scheme in which Costanzo and Recio conspired to exchange confidential Drug Enforcement Administration ("DEA") information for monetary benefit.

At trial, the government introduced evidence that Recio—a former DEA agent—and other co-conspirators paid Costanzo—a senior DEA agent—nearly $100,000 for sensitive, nonpublic information regarding DEA cases. In particular, the evidence demonstrated that Costanzo and Recio worked together as special agents at the DEA's Miami Field Division until Recio retired in November 2018 and started a private investigative firm called Global Legal Consulting ("GLC"). Between October 2018 and November 2019, Costanzo provided Recio with nonpublic information from the DEA's Narcotics and Dangerous Drugs Indexing System ("NADDIS"), as well as information regarding law enforcement operations in DEA investigations, including details regarding sealed indictments and forthcoming indictments and arrests. Recio, in turn, used Costanzo's information to assist the Intervenors, defense attorneys David Macey and Luis Guerra, who had hired GLC to help recruit DEA targets as clients. As Costanzo provided this information, entities and individuals associated with him received payments from GLC, Macey, and an individual named Edwin Pagan III. Pagan was a police officer and former DEA task force member, as well as Costanzo's close friend and an alleged middleman between Recio and Costanzo.

---

[1] Specifically, Count Two charged Costanzo with accepting a bribe as a public official, in violation of 18 U.S.C. § 201(b)(2)(C), and Count Three charged Recio with bribery of a public official, in violation of 18 U.S.C. § 201(b)(1)(C).

3

After the defendants were convicted, the district court sentenced Costanzo principally to 48 months' imprisonment and imposed forfeiture in the amount of $98,250, and sentenced Recio principally to 36 months' imprisonment and imposed forfeiture in the amount of $23,250.

On appeal, Recio and Costanzo argue: (1) the subpoenas issued to GLC, and the use of GLC's responses at trial, violated Recio and Costanzo's Fifth and Sixth Amendment rights, respectively; (2) the evidence adduced at trial was insufficient to support Recio and Costanzo's convictions because there was no *quid pro quo*; (3) the government engaged in prosecutorial misconduct; (4) the district court erroneously admitted evidence of Recio's uncharged criminal activity pursuant to Federal Rule of Evidence 404(b); (5) venue was improper in the Southern District of New York; and (6) the forfeiture orders were erroneous.[2] For the reasons set forth below, we find no basis to disturb the convictions, but conclude that the district court erred with respect to the forfeiture orders.

## I. Fifth and Sixth Amendment Challenges

Recio and Costanzo argue that by subpoenaing GLC, introducing testimonial aspects of the subpoena responses at trial, and attributing that testimony to Recio, the government violated Recio's Fifth Amendment right against self-incrimination and Costanzo's Sixth Amendment right to confront a witness against him, namely, Recio. We address each argument in turn.[3]

---

[2] Pursuant to Federal Rule of Appellate Procedure 28(i), Recio and Costanzo join and adopt certain of each other's arguments.

[3] To the extent the government argues that, as to Recio's challenges to the use of the subpoenas and responsive documents, his stipulation to the admission of those documents at trial constitutes actual waiver barring all review on appeal (as opposed to forfeiture which warrants plain error review), we are unpersuaded. We cannot conclude that Recio affirmatively waived his challenge in the absence of any apparent tactical decision by counsel in failing to raise these objections, or any other indicia of deliberate and intentional waiver in the record. *See United States v. Coonan*, 938 F.2d 1553, 1561 (2d Cir.1991) (holding that, where appeal attempts "to evade the consequences of an unsuccessful tactical decision . . . we have no difficulty concluding that [appellant] has waived appellate review" of claim).

4

**A.      Recio's Fifth Amendment Challenge to the Issuance of the GLC Subpoenas**

The Fifth Amendment provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself," U.S. Const. amend. V, and applies whenever "the accused is compelled to make a Testimonial Communication that is incriminating," *Fisher v. United States*, 425 U.S. 391, 408 (1976).  "[T]he right [not only] bars the introduction against a criminal defendant of out-of-court statements obtained by compulsion," *Vega v. Tekoh*, 597 U.S. 134, 141 (2022), but also allows a subpoenaed party "to resist production on Fifth Amendment grounds" "[b]ecause the act of producing documents can be both incriminating and testimonial," *In re Grand Jury Subpoena Issued June 18, 2009* ("*2009 Subpoena*"), 593 F.3d 155, 157 (2d Cir. 2010) (per curiam).

Recio argues that the grand jury and trial subpoenas issued to GLC violated his Fifth Amendment right against self-incrimination because they sought testimonial information from Recio in his "personal capacity" as the "sole manager and employee of GLC."  Recio's Br. at 32.  Because Recio raised this argument below, we review it *de novo*.  *See United States v. Fridman*, 974 F.3d 163, 173 (2d Cir. 2020).  Recio's challenge to the subpoenas is premised on *United States v. Hubbell*, 530 U.S. 27 (2000), in which the Supreme Court held that a grand jury could not subpoena the accused for certain business records because confirming the existence or non-existence of those records constituted a testimonial act that could be incriminating.  *See id*. at 31, 45–46; *see also 2009 Subpoena*, 593 F.3d at 157 (explaining that the act of responding to a subpoena is testimonial when it communicates the "existence, possession, or authenticity" of a document).

However, Recio's reliance on *Hubbell* is misplaced; the subpoena in that case was issued to the defendant personally, whereas the subpoenas in the instant case were issued to GLC as a

5

corporate entity and sought corporate records.[4]  It is well-settled that the right against self-incrimination is "personal" and, pursuant to the collective entity doctrine, cannot be invoked by a corporation, even when the defendant is the sole officer or employee of that corporation.  *See Braswell v. United States*, 487 U.S. 99, 109–12, 116 (1988).  Accordingly, "[a] custodian may not resist a subpoena for corporate records on Fifth Amendment grounds," *id.* at 113, because their "act of production is not deemed a personal act, but rather an act of the corporation," *id.* at 110.  Although *Braswell* predated *Hubbell*, we have rejected the assertion that "we are no longer compelled to follow [the *Braswell*] holding" in light of *Hubbell*.  *Armstrong v. Guccione*, 470 F.3d 89, 98 (2d Cir. 2006).  Indeed, since *Hubbell*, we have continued to hold that "an individual custodian holding a collective entity's records in a representative capacity [may not] refuse to produce the documents," and Recio presents no grounds to depart from that binding precedent here.  *See Fridman*, 974 F.3d at 180.  Therefore, we conclude that the grand jury and trial subpoenas issued to GLC did not violate Recio's right against self-incrimination.[5]

---

[4]  To the extent Recio argues the grand jury subpoena's request for "all [bank] accounts used by Manuel Recio in his personal capacity," App'x at 798, exceeded the scope of GLC's corporate records, we conclude that, even assuming *arguendo* Recio is correct, any error is harmless because the grand jury's indictment of Recio relied solely on payments made from GLC's bank account, not Recio's personal accounts, and the government did not introduce evidence regarding any of Recio's personal accounts at trial.  *See United States v. Allen*, 864 F.3d 63, 98–101 (2d Cir. 2017) (applying harmless error standard when tainted evidence was used in the grand jury and at trial); *see also In re Grand Jury Proceeding*, 971 F.3d 40, 56 (2d Cir. 2020) ("[W]hen a witness refuses to produce documents on Fifth Amendment grounds, the court must distinguish between those documents that are personal in nature, and therefore may be withheld, and those that are corporate in nature, and therefore fall within the 'collective entity' exception.").

[5]  Recio also argues the district court abused its discretion in declining to quash the grand jury subpoena because it was improperly used to gather evidence in preparation for trial.  We are unpersuaded.  Recio failed to demonstrate that the government used the grand jury "for the sole or dominating purpose of preparing an already pending indictment for trial." *United States v. Calk*, 87 F.4th 164, 186 (2d Cir. 2023) (internal quotation marks and citation omitted).  As the district court noted, "[g]iven that Recio is the sole member and whole owner of the subject LLC, there is no reason to infer an improper purpose from the fact that there is an overlap between information belonging to Recio in his personal capacity and information he holds as the custodian of records for the company." App'x at 927.  Moreover, the district court acted well within its discretion in determining that "there [was] no basis to conclude that the timing of the

### B. Recio's Fifth Amendment Challenge to the Use of the GLC Subpoena Responses at Trial

Recio next argues that, even assuming *arguendo* the subpoenas issued to GLC were proper, the government "use[d] GLC's records against Recio at trial in violation of his Fifth Amendment rights." Recio's Br. at 35. Because Recio failed to raise this argument below, we review it for plain error.[6] *United States v. Abad*, 514 F.3d 271, 274 (2d Cir. 2008) ("Unpreserved constitutional claims are subject to review for plain error."). Accordingly, Recio must establish that the district court made "1) an error; 2) that was plain; 3) that affected [his] substantial rights; and 4) that seriously affected the fairness, integrity or public reputation of judicial proceedings." *United States v. Greer*, 631 F.3d 608, 612 (2d Cir. 2011) (internal quotation marks and citation omitted).

As noted above, although "a corporate custodian is not entitled to raise the Fifth Amendment as a shield to the production of corporate records . . ., *Braswell* established a 'mitigating evidentiary privilege' to reduce the risk that the custodian's act of production would be attributed to him personally." *Armstrong*, 470 F.3d at 97 (quoting *Braswell*, 487 U.S. at 117–18). The *Braswell* privilege "prevent[s] the government from using the custodian's act of production in a subsequent criminal proceeding against the custodian." *Id.* at 98. Accordingly, "the government

---

[s]ubpoena demonstrates an irregularity" where the "[g]overnment [had] represented that its investigation into uncharged criminal conduct and uncharged co-conspirators [was] ongoing." *Id.*; *see United States v. Jones*, 129 F.3d 718, 723 (2d Cir. 1997). For example, the face of the subpoena covered criminal conduct that was not the subject of the pending Indictment against Recio and Costanzo, including acting as an accessory after the fact, in violation of 18 U.S.C. § 3, witness tampering, in violation of 18 U.S.C. § 1512, and money laundering, in violation of 18 U.S.C. § 1956. In addition, alleged co-conspirators Macey and Pagan were later indicted. *See* Superseding Redacted Indictment, *United States v. Pagan III*, No. 24-cr-641 (JHR) (S.D.N.Y. Feb. 14, 2025), ECF No. 28.

[6] Recio urges us to review this issue *de novo* on the ground that the Fifth Amendment privilege is self-executing. However, "[i]t has long been settled that the privilege generally is not self-executing and that a witness who desires its protection must claim it." *Salinas v. Texas*, 570 U.S. 178, 181 (2013) (internal quotation marks and citation omitted). Although there are limited exceptions when, for instance, "governmental coercion makes [the defendant's] forfeiture of the privilege involuntary," there is no evidence that governmental coercion somehow prevented Recio from objecting to the use of GLC's subpoena responses at trial. *Id.* at 184; *see also United States v. Ramos*, 685 F.3d 120, 127 (2d Cir. 2012).

may not introduce into evidence before the jury the fact that [a corporation's] subpoena was served upon and the corporation's documents were delivered by one particular individual, the custodian." *Braswell*, 487 U.S. at 118.

As relevant to this appeal, the government requested that GLC produce "[a]ll documents, communications, or other records related to [a] November 12, 2018 invoice" in which a company named EBCO International of Miami ("EBCO") billed GLC $2,500 for investigative services. App'x at 803, 805. As GLC's custodian, Recio produced, *inter alia*, certain messages between himself and Costanzo that contained a discussion regarding running names in NADDIS, as well as a reference to Delvepoint, an investigative software service for which defendants argue EBCO billed GLC $2,500. A cover page prepared by Recio indicated that the messages were responsive to the above-referenced request and a custodian-of-records form signed by Recio stated that the returns constituted business records. Both documents were introduced into evidence at trial.

On appeal, Recio argues "the government used GLC's trial subpoena return to argue in its closing argument that *Recio* admitted that the $2,500 payment from GLC to EBCO was in consideration for a request to 'run' [names in NADDIS] contained in the text messages." Recio's Br. at 23 (emphasis added) (citation omitted). For example, Recio points to the government's closing argument, in which the prosecutor stated that GLC's subpoena response—which affirmed that the "[t]ext messages from Recio asking Costanzo to run names in [NADDIS]" were "relat[ed] to" the November 2018 invoice—was "*pulled together by Manny Recio*." App'x at 572–73 (emphasis added). In its rebuttal, the prosecutor went a step further, stating:

> You have direct evidence [of bribery] in the form of the GLC subpoena returns . . . . Global Legal Consulting, Manuel Recio's company, received a subpoena to provide records about the $2500 payment. *Manuel Recio, he was the one who collected those records and put them together.* And what did he provide? Text messages between him and Costanzo talking about the NADDIS searches. Is that not direct evidence? That is *Recio*, that is Global Legal Consulting *truthfully admitting* that

8

the reason Costanzo got that payment—the reason EBCO got that payment was because Costanzo was leaking DEA information and NADDIS information.

*Id.* at 662–63 (emphases added). The government now acknowledges, "[a]rguably, under *Braswell*, [it] should not have elicited that Recio was the custodian of records." Gov't Br. at 54. We conclude that *Braswell* clearly prohibited the government from introducing the fact that Recio produced the GLC documents, let alone arguing, as it did, that by producing those documents Recio was "truthfully admitting" that the November 2018 payment to EBCO constituted a bribe. App'x at 663; *see Braswell*, 487 U.S. at 118. However, although the error in allowing the reference to Recio as the custodian of the subpoenaed records (and any arguments resulting therefrom) was plain, Recio has failed to demonstrate that the error affected his substantial rights because, in light of the overwhelming independent evidence to support his convictions, there is no "reasonable probability that the error affected the outcome of the trial." *United States v. Mangano*, 128 F.4th 442, 475 (2d Cir. 2025) (internal quotation marks and citation omitted).

Bribery and, for the purposes of this case, honest services fraud require that Recio, either "directly or indirectly," gave, offered, or promised "anything of value" to Costanzo to "influence any official act" or to induce him to "act in violation of [his] lawful duty." 18 U.S.C. § 201(b)(1); *see also id.* § 1346 (honest services fraud). As an initial matter, we agree with the district court that, even if Recio had objected to the reference to him in the subpoena response and the related testimony, "the outcome may have been the redaction of Recio's name from the custodian of records document, but the GLC subpoena return likely would still have been admitted pursuant to the Court's holding in *Braswell*, and the jury likely would have made the same inference given that GLC was Recio's company, and there was clear evidence of that." App'x at 872. Moreover, contrary to Recio's assertion, the documents themselves made abundantly clear (apart from any improper suggestion by the government of an "admission" by Recio as the custodian of records)

9

that GLC "had no contracts supportive of the invoices or other materials related to Constanzo and other parties" like EBCO. Recio's Br. at 37. Furthermore, other compelling evidence adduced at trial, such as Costanzo's message to Macey the day before the EBCO payment saying, "Just made 2500," and the close proximity between the payment and Costanzo's messages to Recio with confidential information, left no room to doubt that the EBCO payment actually constituted a payment to Costanzo. App'x at 737.

In addition, even completely apart from the November 2018 EBCO payment, the government presented overwhelming evidence that Recio paid Costanzo indirectly through a company called JEM Solutions Inc. ("JEM")—which was co-owned by Costanzo, Pagan, and Recio—to induce Costanzo to provide confidential DEA information in violation of his official duty. For instance, the government introduced evidence that, on April 17, 2019, JEM invoiced GLC $10,000 for an alleged risk management investment—though neither company produced any records of this purported investment—and Recio paid JEM $10,000 the same day. Less than a week before that payment, Recio told a co-conspirator about an upcoming DEA arrest of several Venezuelan targets—information which the co-conspirator understood came from Costanzo. Additionally, approximately ten days after that payment, Recio asked Costanzo to search two names in NADDIS, and Costanzo did so.

Recio made a second payment to JEM on June 3, 2019. JEM invoiced GLC $10,750, this time for alleged case services—though, again, neither company produced any other records of such services—and Recio paid JEM the same amount on the same day. In the month preceding this payment, Recio had asked Costanzo to run seven more names in NADDIS, which Costanzo did. Moreover, approximately one month after the payment, Costanzo used JEM's bank account to purchase a plane ticket valued at approximately $1,000. That same day, Costanzo provided

10

Recio with the names of individuals who had recently been indicted and those who would be indicted in the coming weeks. During this conversation, Costanzo complained to Recio that Guerra, an Intervenor and one of the defense attorneys, did not bring anything to the table, and Recio responded by telling Costanzo about several payments from Guerra's clients. The next day, Costanzo, Recio, and Guerra had a conversation during which Guerra, who was with Recio at the time, told Costanzo, "we're here scheming about how we're going to make money, money, money, so we're all on the same page." App'x at 723. Approximately a week and a half later, Costanzo provided Recio with information about an upcoming arrest by the United States Department Homeland Security. Here, the "circumstantial evidence of the [close] timing" between Recio's April and June payments to JEM and Costanzo's disclosure of confidential information provided compelling evidence of a *quid pro quo*, particularly where the JEM invoices offered as justification for these payments were completely unsupported by any other corporate records.[7] *United States v. Silver*, 948 F.3d 538, 571 (2d Cir. 2020). Furthermore, the day after Costanzo expressed concern about Guerra's ability to bring in clients, both Recio and Guerra attempted to persuade Costanzo of their ability to "make money," which raises the inference that Costanzo had a personal interest in Recio's ability to monetize the information he was providing. App'x at 723.

In sum, we conclude that Recio has failed to establish a "reasonable probability" that, but for the evidence that he was the custodian of records for GLC and arguments related thereto by the government in its summation, the jury would not have convicted him of bribery, honest services fraud, and the related conspiracy offenses. Therefore, Recio's substantial rights have not been

---

[7] Despite Appellants' arguments to the contrary, we conclude that the government did not need to offer direct evidence that Costanzo withdrew money from the JEM account to prove that he "received" these payments from Recio. Costanzo co-owned JEM, and the government provided more than an ample basis for the jury to find that the bribe was received by Costanzo.

affected by the Fifth Amendment violation, and there is no basis to vacate his conviction under the plain error standard.[8]

## C. Costanzo's Sixth Amendment Challenge

The Sixth Amendment's Confrontation Clause guarantees every defendant the right "to be confronted with the witnesses against him," U.S. Const. amend VI, and prevents the admission of "testimonial statements of witnesses absent from trial" unless the witnesses are "unavailable" and "the defendant has had a prior opportunity to cross-examine," *Crawford v. Washington*, 541 U.S. 36, 59 (2004). Costanzo argues his Sixth Amendment right was violated because the government admitted testimonial statements from Recio in his capacity as GLC's custodian—who was unavailable for cross-examination—and presented these statements as admissions by Recio, which effectively transformed them into a confession by a non-testifying co-defendant. Costanzo failed to raise these arguments below, and we therefore review them for plain error. *See United States v. Hendricks*, 921 F.3d 320, 326 (2d Cir. 2019).

Testimonial statements include "pretrial statements that declarants would reasonably expect to be used prosecutorially," *Crawford*, 541 U.S. at 51, such as an "interpretation of what [a business] record contains or shows," *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 322 (2009). Although corporations like GLC do not possess Fifth Amendment rights, their custodians are still

---

[8] For similar reasons, we reject Recio's argument that his convictions should be vacated because the government engaged in prosecutorial misconduct by indicating in its summation that Recio was responsible for GLC's subpoena responses and by stating, in closing argument and rebuttal, that Recio confessed to bribing Costanzo. We will vacate a conviction for prosecutorial misconduct only where the improper conduct caused "substantial prejudice by so infecting the trial with unfairness as to make the resulting conviction a denial of due process." *United States v. Certified Envt'l Servs.*, 753 F.3d 72, 95 (2d Cir. 2014) (internal quotation marks and citation omitted). Here, for the reasons explained above, the comments by the prosecutor in summation, "when viewed in the context of the entire trial, [were] not so severe and significant as to deprive [Recio] of a fair trial," *United States v. Truman*, 688 F.3d 129, 144 (2d Cir. 2012) (internal quotation marks and citation omitted), especially in light of the overwhelming evidence of Recio's guilt. To the extent Costanzo also adopts that argument, we reach the same conclusion with respect to his convictions for the reasons discussed *infra*.

capable of making testimonial statements. *See, e.g.*, *United States v. Graham*, 477 F. App'x 818, 823 (2d Cir. 2012) (summary order) (recognizing that a subpoena response by a company custodian can "constitute[] a testimonial statement"). Here, Costanzo argues the government improperly used GLC's cover page and act of production to present the jury with certain incriminating testimonial statements about the November 2018 payment that could not be cross-examined, and, by attributing those statements to Recio, also violated his rights under *Bruton v. United States*, 391 U.S. 123 (1968). However, we need not address those arguments because, even assuming *arguendo* that there was error in this respect and the error was plain, we conclude that it did not affect Costanzo's substantial rights for substantially the same reasons articulated by the district court and summarized above in connection with Recio's Fifth Amendment challenge. Moreover, in addition to the evidence that Recio paid Costanzo in exchange for confidential information, the government also introduced evidence that other alleged co-conspirators provided items of value in exchange for Costanzo' provision of confidential information. For example, in April 2019, five days after Costanzo provided Recio the information about the DEA's upcoming arrest of certain Venezuelan targets, Macey purchased Yankees tickets for Costanzo. Additionally, the government introduced evidence that Pagan—the alleged middleman and co-owner of JEM with Recio and Costanzo—paid Costanzo $70,000, even though Pagan's annual government salary was less than $62,000. Specifically, on January 17, 2019, Pagan paid Costanzo's father $50,000, which he then "gifted" to Costanzo for a down payment on a house, and about one year later, Pagan paid Costanzo's girlfriend $20,000 to cover Costanzo's attorney's fees.

In light of the overwhelming independent evidence establishing Costanzo's guilt, we conclude that he has failed to establish a reasonable probability that, but for the alleged testimonial statements from Recio as the custodian of records for GLC and arguments related thereto by the

13

government, the jury would not have convicted Costanzo of bribery, honest services fraud, and the related conspiracy offenses. Thus, Costanzo's substantial rights have not been affected by any Sixth Amendment violation, and the alleged errors do not support setting aside his convictions under the plain error standard.

## II. Sufficiency of the Evidence

Appellants argue that the evidence presented at trial was insufficient to convict them of bribery and honest services fraud because the government failed to establish the existence of a *quid pro quo*. Specifically, they argue that although it is undisputed that Costanzo provided confidential information to Recio, the government was also required to prove that Costanzo "received, or intended to receive, something of value in exchange for violating his official duty," and here Costanzo violated his duty "not for money, but to help his close friends succeed in recruiting clients and even to benefit the DEA." Costanzo's Br. at 37, 48 (internal quotation marks, citation, and emphasis omitted).

We review sufficiency of evidence challenges *de novo*, but in doing so we "view the evidence in the light most favorable to the government, crediting every inference that could have been drawn in the government's favor, and deferring to the jury's assessment of witness credibility and its assessment of the weight of the evidence." *United States v. Reichberg*, 5 F.4th 233, 248 (2d Cir. 2021). "A quid pro quo is a government official's receipt of a benefit in exchange for an act he has performed, or promised to perform, in the course of the exercise of his official authority." *United States v. Bruno*, 661 F.3d 733, 743 (2d Cir. 2011). It is well-settled that a jury may infer the existence of a *quid pro quo* from circumstantial evidence, including evidence of a benefit received and a violation of an official duty, and behavior indicating consciousness of guilt. *See*

14

*id.* at 744; *see also United States v. Rutigliano*, 790 F.3d 389, 402 (2d Cir. 2015) (acknowledging that an agreement can be reached through "tacit understanding").

Here, as we have outlined above in connection with our analysis of the Fifth and Sixth Amendment challenges, there was more than sufficient evidence to support the existence of *quid pro quo* bribery. Indeed, the record demonstrates a clear temporal relationship between Costanzo's disclosure of sensitive DEA information and his receipt of financial benefits from Recio and others, and a reasonable juror could conclude—based on, *inter alia*, the use of corporate entities and unsupported invoices, the incriminating communications between Appellants and other alleged co-conspirators during the scheme, and the substantial efforts to conceal their actions—that Recio and his co-conspirators repeatedly paid Constanzo for providing confidential information, and that Costanzo was not providing such information for free.

In sum, we conclude that the totality of the evidence adduced at trial was sufficient for a jury to find a *quid pro quo* and that the defendants were guilty of each of the charged crimes beyond a reasonable doubt.

## III.  Evidentiary Ruling

Recio argues that "the [d]istrict [c]ourt erred by failing to exclude a memorandum sent by Recio from his official government email to his personal email that the government argued compromised national security but was unrelated to the charged offenses." Recio's Br. at 38. Recio contends that the email and corresponding memorandum were inadmissible under Federal Rule of Evidence 404(b) as a prior bad act used by the government to prove propensity.

"We review a district court's evidentiary rulings for abuse of discretion." *Carroll v. Trump*, 124 F.4th 140, 157 (2d Cir. 2024) (internal quotation marks and citation omitted). Here, the district court admitted the memorandum, which described a covert DEA operation and identified several

targets, as well as Recio's email sending that memorandum from his DEA account to his personal account shortly before his retirement. In doing so, the district court concluded that the documents were admissible because the email and attached memorandum were not a prior bad act, but rather "part of the charged scheme" of conspiracy and therefore admissible without regard to Rule 404(b), and, alternatively, the documents were "legitimate 404(b) evidence." App'x at 74. We discern no abuse of discretion in those determinations.

Evidence of uncharged criminal conduct is not subject to the limits of Rule 404(b) if it is "inextricably intertwined with the evidence regarding the charged offense" or "necessary to complete the story of the crime on trial." *United States v. Quinones*, 511 F.3d 289, 309 (2d Cir. 2007) (internal quotation marks and citation omitted). Here, we conclude that "it [was] within the trial court's discretion to admit [the email and memorandum] to inform the jury of the background of the conspiracy charged," *United States v. Diaz*, 176 F.3d 52, 79 (2d Cir. 1999), because the memorandum, which was submitted by Costanzo and named him as the manager of a covert DEA operation, provided background on later conversations between Recio and Costanzo about one of the targets named in the memorandum, and Constanzo disclosed that another target in the memorandum had been indicted under seal. Moreover, Recio's transmission of the confidential plans in the memorandum also was admissible because it was inextricably intertwined with the charged bribery scheme with Costanzo and others. Similarly, the district court was within its discretion to determine that, in the alternative, this same evidence was admissible under Rule 404(b) because it was probative of Recio's "intent, preparation, plan, [and] knowledge," Fed. R. Evid. 404(b)(2), in that it demonstrated his plan, shortly before his retirement, to capitalize in the future on confidential information about ongoing DEA operations to recruit new clients. Moreover, the evidence was not unduly prejudicial under Rule 403, as it did "not involve conduct

16

any more sensational or disturbing than the crimes with which [Recio was] charged." *United States v. Roldan-Zapata*, 916 F.2d 795, 804 (2d Cir. 1990).

**IV.  Venue**

Appellants argue venue was improper in the Southern District of New York because no offense conduct took place in that District.  We disagree.

Venue is generally proper in the "district where the offense was committed."  Fed. R. Crim. P. 18.  In the absence of statutory authority, we determine venue based on the nature of the crime and the location of the criminal acts.  *See United States v. Lange*, 834 F.3d 58, 68 (2d Cir. 2016).  "Venue may lie in more than one place if the acts constituting the crime and the nature of the crime charged implicate more than one location."  *Id.* at 68 (internal quotation marks and citation omitted).  For bribery and honest services fraud, which are continuing offenses, venue lies in "any district in which [the] offense was begun, continued or completed."  *Id.* at 68–69 (internal quotation marks and citation omitted); *see also* 18 U.S.C. § 3237(a).  For conspiracy, venue lies in "any district in which the conspiracy was formed or in any district in which a conspirator committed an overt act in furtherance of the criminal scheme."  *United States v. Rommy*, 506 F.3d 108, 119 (2d Cir. 2007) (citations omitted); *see also United States v. Royer*, 549 F.3d 886, 894 (2d Cir. 2008) (explaining that the overt act must be intentional or knowing, and it must be foreseeable to the conspirator that the act would occur in the venue).

We review a district court's venue determination *de novo*, bearing in mind that venue must be established as to each count by a preponderance of the evidence.  *See United States v. Tzolov*, 642 F.3d 314, 318 (2d Cir. 2011).  We view that evidence "in the light most favorable to the government, drawing every reasonable inference in support of the jury's verdict."  *United States v. Tang Yuk*, 885 F.3d 57, 71 (2d Cir. 2018).  Here, it is undisputed that two events occurred in the

17

Southern District of New York: (1) Recio called Costanzo from the Southern District of New York on July 16, 2019, and during that call Costanzo provided confidential information about an upcoming arrest by Homeland Security Investigations; and (2) Costanzo attended a Yankees game on April 16, 2019 using tickets purchased for him by Macey. Construing the evidence most favorably to the government, a rational jury could find that Recio's phone call to Costanzo and Costanzo's acceptance of benefits from Macey constituted a continuation of their bribery and honest services fraud offenses, as well as overt acts in furtherance of the related conspiracies. Furthermore, venue was foreseeable to each defendant, as Recio was in the Southern District when he obtained confidential information from Costanzo on the phone, and Costanzo was in the Southern District when he accepted a benefit from a co-conspirator by attending the Yankees game. In sum, we find the various venue challenges raised by Appellants to be without merit.

## V.    Forfeiture

Appellants each challenge different aspects of their forfeiture orders. On appeal of a forfeiture order, we review legal conclusions *de novo* and factual findings for clear error. *See United States v. Treacy*, 639 F.3d 32, 47 (2d Cir. 2011). Forfeiture orders need only be supported by a preponderance of the evidence, and the district court is permitted to make a reasonable approximation of the appropriate forfeiture amount based on that evidence. *See United States v. Uddin*, 551 F.3d 176, 180 (2d Cir. 2009).

Here, the statute that applies to Appellants' offenses provides for forfeiture of "[a]ny property, real or personal, which constitutes or is derived from proceeds traceable to" their bribery, honest services fraud, and related conspiracy convictions. 18 U.S.C. § 981(a)(1)(C). "[P]roceeds" are defined as "property of any kind obtained directly or indirectly, as the result of the commission of the offense giving rise to the forfeiture, and any property traceable thereto." *Id.* § 981(a)(2)(A).

18

The district court determined that, as to both Costanzo and Recio, the following payments constituted proceeds subject to forfeiture under the statute: GLC's $2,500 payment to EBCO in November 2018; GLC's $10,000 payment to JEM in April 2019; and GLC's $10,750 payment to JEM in June 2019. The district court also determined that, as to Costanzo alone, the following payments were also subject to forfeiture: Macey's $5,000 payment to Costanzo's contractor in March 2019; Pagan's $50,000 payment to Costanzo's father in January 2019; and Pagan's $20,000 payment to Costanzo's girlfriend in January 2020.

On appeal, Costanzo argues that the order requires him to "forfeit funds that do not qualify as 'proceeds'" under the statute, namely, "Pagan's $50,000 investment in Costanzo's townhouse and $20,000 payment for Costanzo's attorney," which Costanzo contends do not have "anything to do with the charged scheme." Costanzo's Br. at 62. The district court, however, did not clearly err in finding, by a preponderance of the evidence, that these payments were traceable to Costanzo's offense conduct. In reaching this conclusion, the district court was permitted to consider not only the credibility of Pagan's testimony explaining the payments, but also circumstantial evidence of their illicit nature, such as Pagan's net income, which was less than $62,000; Pagan's co-ownership of JEM, which received payments in close proximity to Costanzo's provision of confidential information to Recio; and Costanzo's lie to his mortgage lender about the source of the $50,000.

Recio challenges his forfeiture order insofar as it reflected GLC's $10,000 and $10,750 payments to JEM on the basis that "[s]uch proceeds were already forfeited against Costanzo" and Recio, having paid these amounts, "did not '*receive*' such proceeds" as a result of the crime. Recio's Br. at 50 (emphasis added). Recio relies on *Honeycutt v. United States*, 581 U.S. 443 (2017), which held that when a court orders forfeiture pursuant to 21 U.S.C. § 853, the defendant

19

may not be held jointly and severally liable for "property that his co-conspirator derived from the crime but that the defendant himself did not [actually] acquire." *Id.* at 445.[9] In *Honeycutt*, the forfeiture order improperly required the defendant to disgorge proceeds that he never actually "used in or acquired because of the crime." *Id.* at 448. Here, however, it is undisputed that Recio actually possessed the $20,750 at issue, which he acquired from Macey and then became proceeds of the crime when he paid the money to Costanzo. *See United States v. Contorinis*, 692 F.3d 136, 147 (2d Cir. 2012) ("[P]roperty must have, at some point, been under the defendant's control . . . in order to be considered 'acquired' by him."). Therefore, this *Honeycutt* limitation is inapposite to the factual circumstances here. *See United States v. Tanner*, 942 F.3d 60, 67 (2d Cir. 2019) (acknowledging that *Honeycutt's* limitation "applies only to co-conspirators who never possessed the tainted proceeds of their crimes . . . [b]ut when each co-conspirator acquired the full proceeds as a result of the crime[s], each can still be held liable to forfeit the value of those tainted proceeds") (internal quotation marks and citations omitted).

However, *Honeycutt* also provides that when "two or more defendants jointly cause harm, each defendant is held liable for the entire amount of the harm; *provided, however, that the plaintiff recover only once for the full amount.*" *Honeycutt*, 581 U.S. at 447 (emphasis added). In *Tanner*, we vacated a forfeiture order that required "each" co-defendant to forfeit the total proceeds of their joint scheme because it improperly required the defendants to forfeit "double [the] amount" of the

---

[9] *Honeycutt* analyzed forfeiture under 21 U.S.C. § 853, which differs materially from the forfeiture statute at issue here, 18 U.S.C. § 981. As of 2022, we had "not yet determined whether *Honeycutt's* [limitation] applies equally in all respects to forfeiture orders under other statutes," *United States v. Pastore*, 2022 WL 2068434, at *6 (2d Cir. June 8, 2022) (summary order), but since then we have applied the *Honeycutt* limitation in the context of 18 U.S.C. § 981 in a non-binding summary order, and the government does not argue here that *Honeycutt* does not apply to Section 981. *See, e.g.*, *United States v. McIntosh*, Nos. 14-1908, 14-3922, 17-2623, 2023 WL 382945, at *2 (2d Cir. Jan. 25, 2023) (summary order) ("We conclude and the government now concedes that *Honeycutt's* reasoning applies with equal force to the forfeiture statute at issue here, 18 U.S.C. § 981(a)(1)(c).").

total illicit proceeds, rather than ordering forfeiture "jointly and severally."  942 F.3d at 67; *see also United States v. Mandell*, 752 F.3d 544, 554 (2d Cir. 2014) (agreeing with the parties that the forfeiture order under 18 U.S.C. § 981 "should have made the defendants jointly and severally liable for the forfeiture").  At the time the district court ordered forfeiture against Recio, it had already ordered Costanzo to forfeit proceeds reflecting GLC's $10,000 and $10,750 payments to JEM.  The district court therefore erred when it ordered Recio to forfeit this same amount without making Recio and Costanzo jointly and severally liable for that amount, and that error requires remand.

*  *  *

We have considered Costanzo and Recio's remaining arguments and find them to be without merit.  Accordingly, the amended judgment as to Costanzo and judgment as to Recio are **VACATED** with respect to forfeiture, but **AFFIRMED** in all other respects.  The forfeiture orders are **VACATED**.  The case is **REMANDED** to the district court with respect to the forfeiture orders for further proceedings consistent with this summary order.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

21